William **STEVENSON**, Jr.

v.

Barbara **STEVENSON**.

Supreme Judicial Court of Maine.

Argued April 30, 1992.
Decided Aug. 20, 1992.

Howard J. Feller (orally), Beagle, Pearce, Feller & Ridge, Portland, for plaintiff.

Ellyn C. Ballou (orally), South Freeport, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

William Stevenson appeals, and Barbara Stevenson cross-appeals, from a divorce judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*). William argues that the court erred in its determination and division of the marital estate and in its failure to award him alimony and attorney fees. Because we find that the court's only error was failing to assign a $50,000 debt unequivocally to Barbara, we modify the judgment to assign that debt to Barbara and, as so modified, affirm.[1]

William was raised in Delaware where his parents owned property known as Sandy Landing. In 1968, his parents divorced and the father deeded his half interest in Sandy Landing to William and his brother Thomas. In 1972, William and Barbara were married. Six months later, William's mother died leaving the rest of Sandy Landing along with $64,000 in other property (including shares in a family land partnership) equally to William and Thomas. The brothers were also the executors of the estate and apparently decided at that time to partition Sandy Landing between them. In a deed which William signed as executor of his mother's estate, and in which his brother joined as executor and in his individual capacity, William's portion of the Sandy Landing property inherited from his mother was deeded to William and Barbara jointly.

With the assets of these bequests, William and Barbara were able to start and develop two jointly owned and operated fishing businesses. At first William and Barbara both worked on the boats, then later, after they both came ashore, Barbara managed the finances of the business and William handled the repairs and other onshore duties. In addition to the fishing businesses, Barbara has developed a boat management and seller's representative business in which she manages the finances and brokers fish sales for fishing boats.

In 1987, they sold a portion of Sandy Landing for $97,500 and used approximately $56,000 of that money to retire debts of the businesses. In 1988, they sold the rest of Sandy Landing for $465,000, $150,000 of which was used to retire business debts and $50,000 was received in cash. For the remaining $265,000, they took a ten-year note payable to them jointly that was secured by a mortgage. In 1986, the couple moved to Auburn and purchased a home. Subsequently, the parties gave Fleet Bank a mortgage on the Auburn home to secure a $50,000 line of credit for the businesses. At the time of the divorce, the line of credit was a liability for the full $50,000.

The parties separated and William sued for divorce. After a trial on the issue of marital property and its distribution, the

---

1. Barbara has indicated to the court that she does not wish to press her cross-appeal if we deny William's appeal. Since we deny William's appeal in all respects except the court's failure to assign a debt of $50,000 to Barbara, a debt Barbara agrees is her responsibility, we need not address Barbara's cross-appeal.

court issued a partial ruling from the bench and later entered a written judgment that affirmed the oral rulings. The court set aside to William as his separate nonmarital property certain of the personal property he inherited from his mother and grandmother, but found that the balance of the $265,000 note received from the sale of Sandy Landing was marital property. The court then awarded both fishing corporations and the seller's representative business to Barbara and awarded certain other real estate, including the Auburn home, and most of the marital furnishings to William. The court set aside $161,000 of the Sandy Landing note to William and $100,000 to Barbara. After the court denied William's post-trial motions, he appealed and Barbara cross-appealed to this court.

## I

### The Sandy Landing Note

 William's first contention on appeal is that the court erred in its determination that the $265,000 note taken in William's and Barbara's names as part of the consideration for the sale of the Sandy Landing property is marital property. We are unpersuaded that the court erred in that conclusion. The division of property in a divorce proceeding is governed by 19 M.R.S.A. § 722–A (1981 & Supp.1991). The court must first determine what property is marital and what is nonmarital, and set apart to each spouse his or her nonmarital property. *Tibbetts v. Tibbetts*, 406 A.2d 70, 78 (Me.1979). Under subsection 3 of the statute, all property acquired by the parties during the marriage is presumed to be marital property unless excluded from the marital estate by an exception in subsection 2. 19 M.R.S.A. § 722–A(3).[2] One of the exceptions under subsection 2 is for property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent, a provision that William asserts is applicable here. 19 M.R.S.A. § 722–A(2)(B).[3] The party claiming that a piece of property is nonmarital bears the burden of proof on that issue at trial. *Lee v. Lee*, 595 A.2d 408, 410 (Me. 1991). When a party has the burden of proof at trial, we will reverse a ruling against that party only if the evidence compelled the court to find in that party's favor. *Luce Co. v. Hoefler*, 464 A.2d 213, 215 (Me.1983).

 Because the Sandy Landing note was acquired by the parties during the marriage, it is presumed to be marital property, and it was William's burden to prove that it was acquired in exchange for William's nonmarital property. The note was acquired in exchange for Sandy Landing. William's interest in Sandy Landing prior to its sale, however, did not come from a single source. Part of that interest was acquired by William from his father before William married Barbara. Another part was acquired by both William and Barbara from William's share of his mother's estate and from William's brother in the deed of partition.[4]

**2.** 19 M.R.S.A. § 722–A(3) (1981) states:
 All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

**3.** 19 M.R.S.A. § 722–A(2) (1981) states:
 2. For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage, except:

 A. Property acquired by gift, bequest, devise or descent;
 B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
 C. Property acquired by a spouse after a decree of legal separation;
 D. Property excluded by valid agreement of the parties; and
 E. The increase in value of property acquired prior to the marriage.

**4.** William's father also executed a corrective deed to William and his brother subsequent to William's marriage.

■ The trial court was unconvinced that William, when he signed the deed conveying his mother's half of Sandy Landing to himself and Barbara, did not intend the conveyed property to become part of the marital estate.[5] We cannot say on this record that the trial court was compelled to find otherwise. *See Lee*, 595 A.2d at 411. Therefore, once the interest in Sandy Landing that William inherited from his mother was conveyed to William and Barbara, Sandy Landing became a combination of marital and nonmarital property. *Dubord v. Dubord*, 579 A.2d 257, 259 (Me.1990); *Tibbetts*, 406 A.2d at 77.

■ For William to prove at trial that the Sandy Landing note was his nonmarital property, he was required to prove that some or all of the value of the note was acquired with or exchanged for his separate and identifiable nonmarital portion of Sandy Landing. In several transactions involving the Sandy Landing property, however, the proceeds from sales of the portion of Sandy Landing that came from his father were not segregated from the proceeds coming from that portion he inherited from his mother. One part of Sandy Landing was sold for $97,500, approximately $56,000 of which was used to retire debt in the parties joint fishing business. The rest of the proceeds were not accounted for. When the rest of Sandy Landing was sold, $150,000 of the sale price was used to retire business debts and another $50,000 was unaccounted for. The remaining $265,000 was taken in the form of a note that was placed in the names of Barbara and William. Until William and Barbara separated, payments on the note were made directly to Barbara's seller's representative office and the check deposited in the parties' joint account. Under these circumstances, the court was not compelled to

find that the note was acquired in exchange solely for William's nonmarital portion of Sandy Landing. Since the note was not traceable to his separate nonmarital funds, the trial court was not compelled to find the note was William's nonmarital property. *See Cushman v. Cushman*, 495 A.2d 330, 334 (Me.1985).

## II

### Division of the Marital Estate

William also argues that the court erred in dividing the marital estate by trying to divide the property "equally" rather than "equitably," failing to take into account economic fault, and failing to properly account for all of the property.

■ Once a court has determined the marital and nonmarital status of the property, the court must then justly divide the marital property between the parties after taking into account all relevant factors including their relative contributions to the marital estate, their nonmarital property, and their independent economic circumstances. 19 M.R.S.A. § 722–A(1).[6] We review a court's division of the marital estate only for abuse of discretion. *Terison v. Terison*, 600 A.2d 1123, 1125 (Me.1992).

■ The court attempted to divide the marital estate equally because it found that both parties contributed equally to the marital estate; William's large infusion of capital was offset by Barbara's entrepreneurial leadership and management. That finding by the court is not clearly erroneous. *See Boyd v. Boyd*, 421 A.2d 1356, 1359 (Me. 1980). Furthermore, William's contention, made for the first time on appeal, that Barbara was guilty of economic misconduct is unsupported in the record. There is no evidence of improper diminution of the

---

5. William testified that he conveyed the property to both he and Barbara for estate planning purposes.

6. 19 M.R.S.A. § 722–A(1) states in relevant part:
 In a proceeding: (a) for a divorce ... the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors, including:

 A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
 B. The value of the property set apart to each spouse; and
 C. The economic circumstances of each spouse at the time the division of property is to become effective....

marital estate by either party. *See Kaye v. Kaye,* 538 A.2d 288, 289 (Me.1988).

 Though William alleges several instances of the court's failure to consider and divide all the assets of the marital estate, all but one of those contentions are without merit.[7] The court did fail to allocate to Barbara the $50,000 line of credit that was purchased by the fishing businesses but secured by a mortgage on the parties' Auburn home. Barbara does not dispute that the line of credit is a debt solely of the businesses, and because those businesses have been set aside to Barbara, Barbara should be required to assume sole responsibility for the line of credit debt.

 William's final allegation of error in the distribution of the marital estate is that the court impermissibly distinguished between pre- and post-separation debt of the parties. The record, however, supports the court's finding that at various times before the divorce, the parties loaned approximately equal amounts to the corporations by electing not to receive their individual salaries allotted to them. The court did not abuse its discretion in ignoring these personal loans for the purposes of valuation of the corporations and the property division. After the separation, however, the parties were no longer contributing equally to the corporations, and the court adequately took account of the differences in those contributions.

### III

### Alimony

 William's final argument is that the court erred in failing to grant his request for alimony and attorney fees. The court must consider a range of factors in determining whether to award alimony including the income and employment history and potential of each party. 19 M.R.S.A. § 721(1) (Supp.1991). The court found that both William and Barbara were capable of gainful employment and refused to award alimony. That finding is not clearly erro-

neous and the court's decision not to award alimony nor to require either party to pay attorney fees does not constitute an abuse of discretion.

The entry is:

Judgment modified to provide that Barbara be solely responsible for the Fleet line of credit obligation. As so modified, affirmed.

All concurring.

---

7. The court did not commit clear error in finding that vehicles listed separately on the joint list were not also included in the valuation of the businesses, and did not abuse its discretion in assigning to each party personal debt incurred since the separation.