1997 ME 7

**Marilyn DUBORD**

v.

**Lionel DUBORD.**

Supreme Judicial Court of Maine.

Argued Nov. 4, 1996.
Decided Jan. 10, 1997.

Robert A. Laskoff, (orally) Laskoff and Associates, Lewiston, for plaintiff.

David M. Sanders, (orally) Livermore Falls, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Lionel Dubord appeals from a divorce judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*). Lionel contends that the court erred in determining that certain property was marital, made errors in its calculations, and abused its discretion in establishing the amount and duration of alimony. Because we agree that the house in which the parties had resided was erroneously classified as marital, we vacate the judgment and remand for a reconsideration of all economic issues.

[¶ 2] Marilyn and Lionel Dubord were married in August 1968. Marilyn filed for divorce in August 1993, and a trial was held in 1995. Because there were no minor children, alimony and the characterization and division of property were the primary issues before the court.

[¶ 3] Both before and during the marriage, the parties, personally and through Lionel's real estate business, acquired a substantial amount of property. At the time of the trial, Lionel continued to own and operate a real estate business while Marilyn was employed as a homemaker companion earning $6.00 per hour.

[¶ 4] The court determined whether property was marital or nonmarital and valued the marital real estate at $491,500. The court set aside the marital real estate to Lionel, and ordered Lionel to pay Marilyn $245,000, to compensate her for her share of that marital estate. Pending that payment, the court ordered Lionel to pay Marilyn interest at a rate of 1% per month on the outstanding balance of the obligation. The court also awarded Marilyn alimony of $800 per month beginning on November 1, 1995, decreasing to $300 per month on November 1, 2000. Additionally, the court ordered Lionel to maintain Marilyn's health and medical insurance until she becomes eligible for Medicare.

## I.

[¶ 5] The determination of what property is marital and the disposition of that property is governed by statute. *See* 19 M.R.S.A. § 722–A (1981).[1] Section 722–A(2) defines marital property as "all property acquired by either spouse subsequent to the marriage." Pursuant to section 722–A, a trial court must:

(1) determine what of the parties' property is marital and what is nonmarital, including the contributions each may have made to the acquisition of the marital property, recognizing the contributions of a spouse as a homemaker;

(2) set apart to each that spouse's nonmarital property; and

(3) divide the marital property between them in such proportion as the court deems just.

*Williams v. Williams,* 645 A.2d 1118, 1119 (Me.1994). The court's determination of whether property is marital or non-marital is reviewed for clear error and will not be disturbed on appeal if competent evidence in the record exists to support it. *Nordberg v. Nordberg,* 658 A.2d 217, 219 (Me.1995) (citing *West v. West,* 550 A.2d 1132, 1133 (Me.1988)).

[¶ 6] The court determined that real property located on Route 4 in Jay (the Jay home) was marital property noting that "[t]he Jay home was built for the plaintiff [Marilyn] and she first occupied it, [and that] it was certainly intended to be part of the marital estate." Lionel contends that the court erred in this determination.

---

1. 19 M.R.S.A. § 722–A provides in part:
    1. **Disposition.** In a proceeding: (a) for a divorce ... the court ... shall divide the marital property in such proportion as the court deems just after considering all relevant factors....
    2. **Definition.** For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage, except:
    A. Property acquired by gift, bequest, devise, or descent;
    B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
    C. Property acquired by a spouse after a decree of legal separation;
    D. Property excluded by valid agreement of the parties;
    E. The increase in value of property acquired prior to the marriage.

[¶ 7] Lionel acquired the land on which the Jay home was built by deed in his name only in April 1966. Lionel constructed the home on the land six months prior to the parties marriage in 1968. At that time, Marilyn, two of her children and three of her younger siblings moved into the home. Lionel did not move into the home until after their marriage. The record title to the property remains in Lionel's name.

[¶ 8] The home was built using a revolving line of credit available to Lionel through his construction business. Approximately $16,000 from the line of credit financed the construction of the home. When the line of credit was repaid in not clear. The business records indicating how the line of credit was repaid were destroyed fifteen to twenty years ago. During the course of their marriage the parties made various improvements to the home including new siding, a new roof and interior decorating, and also constructed a two-and-a-half car garage, a swimming pool, and outdoor decks. In addition landscaping work was done. We agree with Lionel's contention that the court's determination that the home was "intended to be part of the marital estate" is unsupported by the record and constitutes an error of law.

[¶ 9] Lionel purchased the land and built the Jay Home prior to the marriage in 1968 and prior to the enactment of 19 M.R.S.A. § 722–A. When the home was constructed in 1968, Lionel could not have had the objective intention of turning the property into marital property when, in fact, marital property did not exist. "Marital property," in its definition and effects, was foreign to the law of divorce and it was a concept incapable of being within the intent of Lionel. *See Young v. Young,* 329 A.2d 386, 390 (Me.1974). In *Young,* the acceptance by a husband of a joint tenancy deed on a home before the adoption of the marital property statute did not transmute[2] the property into marital property. Although recognizing the doctrine of transmutation, we stated:

> Since "transmutation" is dependent upon an objectively manifested exercise of "intent", and since in the present context the legal structure establishing the critical distinction between "marital" and "nonmarital" property had not yet come into existence at the time of defendant's alleged exercise of intent to "transmute" ..., there can be no rational possibility, here, that defendant had "transmuted."

*Id.*

[¶ 10] Furthermore, the record is devoid of any manifestation of an intent by Lionel to create a gift to the marital estate during the marriage. Where we have upheld the transmutation of separate property to marital property, one party has transferred a deed to both parties in joint tenancy. *See e.g. Carter v. Carter,* 419 A.2d 1018, 1022 (Me.1980) (transfer from one spouse to both spouses jointly evidenced intent to make a gift to the marital estate). In this case, the court committed clear error in finding that Lionel had evidenced an intent to create a gift to the marital estate when he built the Jay home in 1968, four years before the effective date of our marital property statute.[3] Therefore, we vacate that portion of the judgment declaring the Jay home to be marital property and remand for a redetermination of all economic issues.[4]

## II.

[¶ 11] Because we are remanding this case for a redetermination of all economic issues, we decline to address additional issues raised by Lionel, save one. Lionel contends that the trial court should have consid-

2. The "transmutation doctrine" refers to a change in the character of the property from separate to marital by an exercise of actual intention objectively manifested. *See Carter v. Carter,* 419 A.2d 1018, 1022 (Me.1980).

3. 19 M.R.S.A. § 722–A became effective January 1, 1972. P.L.1971, ch. 399, § 6.

4. Our conclusion that the court erred in finding the home to be marital property by virtue of Lionel's intent does not foreclose Marilyn, on remand, from demonstrating that the home, or a substantial part thereof, is marital property by virtue of its being acquired (i.e. paid for) during the marriage or that improvements were made to it during the marriage. *See Williams v. Williams,* 645 A.2d 1118, 1125 (*Clifford, J.,* dissenting). Title 19 M.R.S.A. § 722–A(3) creates a presumption that any property acquired subsequent to the marriage is marital property.

ered the tax consequences in dividing the marital property. We agree.

[¶ 12]   We have held that "[t]he value of marital assets should be determined as of the time they are distributed without reference to possible future events." *Bayley v. Bayley,* 602 A.2d 1152, 1154 (Me.1992) (citing *Crooker v. Crooker,* 432 A.2d 1293, 1297 (Me. 1981)). Unless the sale of assets is ordered by the court, or a party makes clear that they intend to sell the property, future tax consequences need not be considered. *Id.* In *Bayley,* we concluded that the divorce court should have considered the tax consequences of the sale of the marital residence in dividing marital property when the wife made clear her intent to sell property prior to the entry of the divorce decree. *Id.*

[¶ 13]   Lionel made known his intent to sell the properties to the divorce court. His testimony reflected that his business income has been greatly diminished, that his obligations pursuant to the divorce judgment could only be satisfied by selling the marital property, and that he was meeting his obligation of the temporary support order through the sale of property. Accordingly, the tax consequences of such sale or sales should have been considered. *See Bayley v. Bayley,* 611 A.2d 570, 571 (Me.1992).

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.