1997 ME 130

Jane H. FINDLEN

v.

Michael FINDLEN.

Supreme Judicial Court of Maine.

Submitted on Briefs May 23, 1997.

Decided June 11, 1997.

**J.** Any other factor having a reasonable bearing on the physical and psychological well-being of the child.

Richard L. Currier, Curier & Trask, P.A., Presque Isle, for plaintiff.

Alan F. Harding, Hardings Law Offices, Presque Isle, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1] Michael Findlen appeals and Jane H. Findlen cross-appeals from the judgment entered in the Superior Court (Aroostook County, *Archibald, A.R.J.*), granting a divorce on the ground of irreconcilable differences. Michael contends the trial court erred by (1) finding that 50% of Greenridge Farms, Inc. was marital property; (2) evenly dividing between the parties the stock representing that 50% interest; (3) failing to allocate responsibility between the parties for the repayment of the loan from Greenridge Farms, Inc. to Michael in the amount of $166,700 and to consider that debt in its allocation of the marital estate; (4) valuing the Marshall Farm at $88,000; (5) its disposition of the property held by the irrevocable trust created by Michael's mother; (6) failing to state in its decision the reasons for not awarding shared parental rights and responsibility as agreed to by the parties; and (7) awarding Jane counsel fees for this appeal. Jane contends the trial court erred by not including the $166,700 loan to Michael as part of Michael's gross income for child support purposes. We vacate the judgment.

[¶ 2] The record discloses the following undisputed facts: Jane and Michael were married on December 15, 1972. Michael has a degree in life sciences and Jane has a degree in nursing. They have three children: Benjamin, born September 14, 1976; Jennifer, born November 11, 1980; and Timothy, born May 15, 1982. In 1975, Michael joined his father and brother in a potato farming operation at Fort Fairfield and was given a one-third interest in the operation. In 1986, the operation was divided with Michael's brother taking one-third of the assets. The remaining two-thirds of the assets were transferred to Greenridge Farms, Inc., with Michael receiving 50 of the 100 shares issued and his father receiving the remaining 50 shares.

[¶ 3] Michael's father died on July 5, 1990. Pursuant to his 1986 will, he devised to Michael his stock in Greenridge Farms, Inc., the Trafton Farm and his interest in a large box storage potato warehouse. Because at the time of his father's death the Trafton Farm was owned by Michael's father and mother, Louise, as joint tenants, the title of the property vested in Louise. By a deed dated December 26, 1991, Louise transferred the Trafton Farm to Michael and Jane as joint tenants. The box storage warehouse had been sold during the lifetime of Michael's

father. Louise used proceeds from this sale to pay the outstanding mortgage on the family home of Michael and Jane, purchased by them in 1982. Title to the home was subsequently transferred to Louise. In September 1993, Louise transferred this property to a trust, entitled "Irrevocable Trust for the Benefit of Michael D. Findlen and Jane H. Findlen" and naming Susan C. Nickerson and Brent K. Jepson as trustees.

[¶ 4] Jane instituted the present action in May 1994. Following the entry of the divorce judgment on October 26, 1995, the court denied Jane's motion for findings of fact and conclusions of law and Michael's motion for reconsideration and correction of the judgment. In response to Jane's motion to compel Michael to comply with the provision of the judgment awarding her $5,000 for attorney fees and seeking attorney fees and costs to defend Michael's appeal, the court ordered Michael within 10 days from the date of the order to pay Jane's attorney the $5,000 previously awarded and an additional sum of $2,500 for fees and expenses necessary to defend Michael's appeal with the provision "for which counsel shall account to Defendant at the conclusion of the appeal."[1]

[¶ 5] Michael first contends that the trial court erred by determining that 50 shares of stock in Greenridge Farms, Inc. he received in his own name in 1986 is marital property.[2] He argues that the original interest he obtained in the family business in 1975 subsequently converted into 50 shares of stock in Greenridge Farms, Inc. was a gift from his father and not marital property subject to division by the court. We disagree. Marital property is defined in 19 M.R.S.A. § 722–A (1981 & Supp.1996) that provides in pertinent part:

> **2. Definition:** For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage, except:

> **A.** Property acquired by gift, bequest, devise or descent;

> **B.** Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

> **C.** Property acquired by a spouse after a decree of legal separation;

> **D.** Property excluded by valid agreement of the parties; and

> **E.** The increase in value of property acquired prior to the marriage.

> **3. Acquired subsequent to marriage.** All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

[¶ 6] In a divorce proceeding, "[t]he party claiming that a piece of property is nonmarital bears the burden of proof on that issue at trial." *Stevenson v. Stevenson,* 612 A.2d 852, 854 (Me.1992). "When a party has the burden of proof at trial, we will reverse a ruling against that party only if the evidence compelled the court to find in that party's favor." *Id.* Here, Michael testified that after working through the shipping season the first year of his return to Fort Fairfield, his father asked if he were interested in staying on and farming with his father and brother. In response to Michael's affirmative reply, arrangements were made "to take me on as a one-third partner in the partnership." He further testified that during the first eight or ten years he farmed with his father and brother he was paid "pretty low wages," but was building "sweat equity" in the business.

---

1. We note that each of the parties filed further post-judgment motions following the appeal from the judgment. The record reflects these motions were heard by the trial court on October 2, 1996, but the court declined to rule on the motions prior to the decision on appeal. In response to Michael's motion, on October 31, 1996, we issued an order suspending the effect of M.R.Civ.P. 73(f) for the purpose of allowing the trial court to enter orders on the parties' pending motions.

2. The parties agreed that the 50 shares of stock in Greenridge Farms, Inc. Michael inherited from his father was nonmarital property.

On this evidence, the court could conclude that the one-third interest acquired by Michael was contingent on his continuing to work in the operation at a low wage until he had built sufficient "sweat equity" to justify the one-third interest. Accordingly, we cannot say the trial court was compelled to find Michael's 50 shares in Greenridge Farms, Inc. was his sole and separate property.

■ [¶ 7] Michael next contends, and Jane agrees, that the court erred by dividing the 50 shares of stock equally between the parties. He argues that the division requires a lingering connection between the parties who obviously wish to sever their ties, and points to *Berry v. Berry,* 658 A.2d 1097 (Me.1995), to support his contention. We agree.

■ [¶ 8] "The disposition of marital property is a matter committed to the sound discretion of the trial court and reviewable only for an abuse of discretion." *Arey v. Arey,* 651 A.2d 351, 353 (Me.1994). Recently, in *Smith v. Smith,* 1997 ME 29, 690 A.2d 970, 971–72 (1997), we vacated a divorce judgment on the ground that the trial court erred by dividing equally between the parties the stock holdings in closely held corporations. We affirmed the principle stated in *Berry v. Berry,* 658 A.2d at 1099, that:

> We cannot expect divorced parties to continue a business relationship that will optimize resources and profits. Therefore,it is particularly important to avoid creating situations where the divorced parties remain in joint management of income producing property.

[¶ 9] Here, there was evidence before the trial court that to allow Greenridge Farms, Inc. to continue to operate and produce any income, it was essential that annual operating loans be arranged. This required signatures from all the shareholders. For the year 1996 no financing had been secured because Jane refused to sign any loan applications or loan documents. In this case, as in *Smith,* it was within the court's power to provide other means of distribution of this marital property to avoid future conflicts between the parties. *See, e.g., Baker v. Baker,* 444 A.2d 982, 986 (Me.1982) (achieving division of marital property by requiring sum of money be paid by one party or mortgage be given on that party's separate property). Accordingly, we conclude the trial court was not acting within its discretion by its division of the marital stock in this closely held corporation.

■ [¶ 10] As to the parties' respective contentions concerning the $166,700 loan from Greenridge Farms, Inc. to Michael, the record supports the trial court's sole determination with regard to the $166,700 that it was a debt and not income, royalties, bonuses or dividends to Michael. We have previously stated that "[m]arital debt is apportioned pursuant to the same considerations as the division of marital property." *Arey v. Arey,* 651 A.2d at 354. *See also Harding v. Murray,* 623 A.2d 172, 175–76 (Me.1993) (trial court's allocation of marital debt will not be disturbed if it appears equitable, and there is rational and credible evidence to support the decision).

[¶ 11] Here, the trial court made no determination, however, whether the debt was a marital debt and, if so, how its repayment should be allocated between the parties. These determinations are a prerequisite to any conclusion relating to Michael's contention that the trial court did not consider the effect of the debt on the value of that portion of the marital estate awarded to each of the parties.

■ [¶ 12] Michael next contends the trial court erred by placing a value on the Marshall Farm at $88,000 and ordering that he pay Jane $44,000 for her interest in that farm. We agree. We have previously noted that when the court is presented with two appraisals as to the value of property that the parties agree is marital and should be equitably divided between them, a mere averaging of the two may not be acceptable; however, we will let stand any estimate within the range of expert opinion reached by the court through an independent review of the evidence. *Shirley v. Shirley,* 482 A.2d 845, 849 (Me.1984) (citation omitted).

[¶ 13] In the instant case, the record reflects there were three farms considered by the court. The parties do not challenge the court's determination that the Trafton Farm and the Findlen Farm were the separate

property of Michael and the Marshall Farm was marital property. The only evidence before the court was an appraisal, to which the parties agreed, that stated the total value of all three farms was $411,000 and were subject to a combined debt of $323,107, leaving a net value of approximately $88,000 for the three farms. Accordingly, on this record we conclude the court erred by placing a net value of $88,000 on the Marshall Farm alone.

■ [¶ 14] Michael next contends the trial court erred by including as marital property the residence placed in the irrevocable trust by his mother. He argues that the trust or its trustees were not parties to this action, and accordingly, the court had no authority to award the property to either party. The record reflects that the provisions in the trust place numerous restrictions on Michael and Jane's ability to reach the corpus of the trust. It also grants to their three children a contingent remainder in the trust.[3]

[¶ 15] The record reflects that the court's valuation of the property at $95,000 is not challenged by the parties. The court determined the property was marital, awarded it to Michael and ordered that he pay Jane $47,500 for her interest. The court further provided that Jane had the right to occupy the residence free of rent until she moved or Timothy graduated from high school. We conclude that the marital interest subject to division is not the residence itself but the parties interest in the trust and the trial court erred by its determination that the residence was marital property and could be divided as between the parties.

■ [¶ 16] Michael next contends the court erred in failing to allocate parental rights and responsibilities of the two minor children of the parties in accordance with the agreement of the parties. To support his position, he points to 19 M.R.S.A. § 752(6) (Supp. 1996) that provides in pertinent part:

> The order of the court must award allocated parental rights and responsibilities

or sole parental rights and responsibilities, according to the best interest of the child. When the parents have agreed to an award of shared parental rights and responsibilities or so agree in open court, the court shall make that award unless there is substantial evidence that it should not be ordered. The court shall state in its decision the reasons for not ordering a shared parental rights and responsibilities award agreed to by the parents.

Section 752(2)(C) and (2)(D) set forth the definitions of "shared" and "sole" parental rights and responsibilities as follows:

> **C.** "Shared parental rights and responsibilities" means that most or all aspects of the child's welfare remain the joint responsibility and right of both parents, so that both parents retain equal parental rights and responsibilities and both parents must confer and make joint decisions regarding the child's welfare.

> **D.** "Sole parental rights and responsibilities" means that one parent is granted exclusive parental rights and responsibilities with respect to all aspects of a child's welfare, with the possible exception of the right and responsibility for support.

[¶ 17] Both parties agree that they had agreed to shared parental rights and responsibilities as to their two minor children at mediation and this agreement was communicated to. the court. Without giving any reason for its decision, the record reflects the trial court stated: "Subject to the right of the Defendant to visit with and be visited by the two minor children, custody is awarded to the Plaintiff." Accordingly, we conclude that the order violates the mandate of section 752(6).

■ [¶ 18] We find no merit in Michael's final contention that the trial court erred by awarding Jane counsel fees for the defense of his appeal. He argues the award must be vacated because by the award the court modified the alimony provision of the divorce

---

**3.** The trust provides in pertinent part that the two non-party trustees may, if requested in writing by Michael and Jane, pay over to them that portion of the principal they may request, but only if neither has a creditor to whom is then owed more than $50,000. Both Michael and Jane have only a limited power of appointment to be exercised by will and only in favor of one another or their issue. Should they fail to exercise their powers of appointment, their interests pass on both their deaths to their children.

judgment without a showing of a change in circumstances. We have previously stated that "[a]ttorney fees in divorce cases for appeals to the Law Court are allowed pursuant to 19 M.R.S.A. §§ 693, 722 (1981 & Supp. 1996)." *Cheoros v. Cheoros*, 690 A.2d 974, 975 (Me.1997). *See also* M.R.Civ.P. 54(b)(3) (if appeal filed, application for attorney fees filed within 30 days after entry of final judgment may be acted on in trial court). The award of attorney fees is a matter of the trial court's discretion. *Rosen v. Rosen*, 651 A.2d 335, 336 (Me.1994). Here, the record reflects that Jane's motion for attorney fees was supported by a memorandum of law and an affidavit of her counsel setting forth his fee arrangements with Jane and his hourly rate. Michael responded by filing an objection denying some of the allegations in Jane's motion. We also note the court provided in its order that Jane's counsel was to account to Michael for the $2500 awarded for counsel fees and expenses at the conclusion of the appeal.

[¶ 19] On remand the trial court must not only address the issues discussed herein, but must also reexamine all economic issues. The court is not limited to the record before us, but may, in its discretion, reopen the record.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

