1999 ME 46

**David T. SEWALL**

v.

**Pimonpan SARITVANICH.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 25, 1999.

Decided March 12, 1999.

Peter A. Anderson, Bangor, for plaintiff.

Martha J. Harris, John D. Bunker, Paine, Lynch & Harris, P.A., Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Pimonpan Saritvanich appeals from a judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) affirming the divorce judgment of the District Court (Bangor, *Russell, J.*). On appeal, Saritvanich argues, inter alia, that the District Court erred when it failed to allocate to the marital estate the appreciation in the value of non-marital property resulting from the contribution of marital funds. We agree and vacate the judgment.

[¶ 2] Sewall and Saritvanich were married in December 1993, and Sewall filed for divorce two years later. The District Court held a hearing in December 1996 and entered the divorce judgment in April 1997.

[¶ 3] At the time of the hearing, Sewall was forty-one years old and the president of the James W. Sewall Company (Sewall Company), a family business in existence for over one-hundred years. Sewall's father had voting control, but Sewall owned all the common stock. He earned in excess of $100,000 a

year and has a 401K plan, an IRA, and life insurance. At the time of his marriage, he owned property in Orono, Castine, and Brooklin.

[¶ 4] Saritvanich is in her early forties. Before she married Sewall, she owned a convenience store in California. She sold the store before her marriage to Sewall, and she receives monthly payments of $382.26 on a note used to finance the sale.[1] At the time of the marriage, Saritvanich owned a home in Old Town. She was not employed during her marriage to Sewall, but, at the time of the hearing, she had plans to start an import-export business. Sewall's insurer provided her health insurance during their marriage, but this coverage ended with the divorce.

[¶ 5] After a hearing, the court entered the divorce judgment. The trial court valued the marital estate at $597,000, consisting of the following: $550,000 appreciation in the common stock of the Sewall Company, $45,000 appreciation in Sewall's 401K plan, and a $2,000 appreciation in Sewall's life insurance plan. The court ordered Sewall to pay Saritvanich $75,000 in three annual installments, with 15% interest from the date of judgment, and to pay $6,577.82 for Saritvanich's attorney fees. In addition, the court ordered Sewall to pay Saritvanich $20,000 to reduce a mortgage that Sewall had co-signed during the marriage on Saritvanich's house in Old Town.

[¶ 6] The court valued Sewall's nonmarital estate at approximately $5,664,200, consisting of the following: the Orono property valued at $184,200,[2] the Castine property valued at $250,000, the common stock in the Sewall Company valued at $5,100,000, a 401K plan valued at $120,000, an IRA valued at $10,000, and an insurance plan valued at $10,000. The court found that Saritvanich's nonmarital estate included the equity of $34,000 in her house in Old Town, rights pursuant to the note acquired in the sale of the California convenience store, and an un-

known number of shares of the capital stock of McDonald's Corporation.

[¶ 7] After the entry of the divorce judgment, Saritvanich filed a timely motion for findings of fact and conclusions of law pursuant to M.R.Civ.P. 52. The court denied the motion. Saritvanich appealed to the Superior Court which affirmed, and then Saritvanich appealed to this Court.

## I. MOTION FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

[¶ 8] Saritvanich argues that the court abused its discretion when it denied her motion for findings of fact and conclusions of law pursuant to M.R.Civ.P. 52. We disagree.

[¶ 9] "The divorce court has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." *Peters v. Peters*, 1997 ME 134, ¶ 10, 697 A.2d 1254, 1258 (quoting *Bayley v. Bayley*, 602 A.2d 1152, 1153–54 (Me.1992)). Pursuant to M.R.Civ.P. 52(b), "[t]he court may, upon motion of a party ... after notice of findings made by the court, amend its findings or make additional findings and, if judgment has been entered, may amend the judgment accordingly." M.R.Civ.P. 52(b). If the judgment does not set forth adequate findings on the contested issues and the court does not make the requested findings pursuant to M.R.Civ.P. 52, intelligent appellate review is impossible and the denial of a motion for further findings of fact constitutes an abuse of discretion. *See Peters*, 1997 ME 134, ¶ 11, 697 A.2d at 1258.

[¶ 10] The court did not abuse its discretion when it denied Saritvanich's motion for findings of fact and conclusions of law because the judgment contains adequate findings. The court made extensive findings with respect to the value and division of all property and the parties' earning capacities. *See id.* ¶ 12, 697 A.2d at 1258. Although the court declined to award spousal support to

---

1. Saritvanich's financial statement dated January 1996 and submitted to the court states that the current value of the note payable is "$30,000 left." The court, however, did not explicitly make this finding in its judgment.

2. Sewall purchased this property from his mother, and the calculation of the property value does not include a $100,000 note owed to his mother on the property.

either party without specifically enumerating its reasons for that decision, the findings of fact set forth throughout the judgment provide a sufficient basis to inform the parties of the reasoning underlying the court's conclusion. *See id.* ¶ 10, 697 A.2d at 1258. Consequently, the court did not err when it denied Saritvanich's motion.

## II. DETERMINATION OF MARITAL AND NONMARITAL PROPERTY

### A. Orono Property

[¶ 11] Sewall purchased the Orono property from his mother in December 1992, one year before he married Saritvanich. He paid for the property by signing a demand note for $100,000, on which he makes payments of interest only. When asked if the house was worth $100,000 on the date of purchase, Sewall testified that "I don't know that it was worth anything different from that. There is a possibility it was—it could be sold for more than that. I would concede that. But I don't have an appraisal or anything...." Saritvanich testified that she used funds from a mortgage on her house in Old Town to improve the Orono property. Sewall also testified that he made improvements to the property during the marriage including renovations to two bathrooms, painting, wall papering, and electrical work. Sewall testified that all of the improvements cost between $3,000 and $4,000.

[¶ 12] The court allocated the entire present value of the Orono property to Sewall's nonmarital estate. The court concluded that the property is presently worth $184,200, that the renovations were made during the

marriage, and that the renovations did not have any appreciable effect on the property's value.

■ [¶ 13] Saritvanich contends that the increase in the property value is attributable in part to marital funds and Sewall offered no evidence as to the relative contribution of the marital and nonmarital investments, therefore, the court should have allocated the entire increase to the marital estate. We agree.

■ [¶ 14] Title 19 M.R.S.A. § 722–A (1981 & Supp.1996), *repealed and replaced by* P.L.1995 ch. 694, §§ B–1, B–2 (effective Oct. 1, 1997), *codified as* 19–A M.R.S.A. § 953 (1998),[3] governed the disposition of property in this case. Pursuant to section 722–A, a court must:

(1) determine what of the parties' property is marital and what is nonmarital, including the contributions each may have made to the acquisition of the marital property, recognizing the contributions of a spouse as a homemaker;

(2) set apart to each that spouse's nonmarital property; and

(3) divide the marital property between them in such proportion as the court deems just.

*Dubord v. Dubord,* 1997 ME 7, ¶ 5, 687 A.2d 647, 648 (quoting *Williams v. Williams,* 645 A.2d 1118, 1119 (Me.1994)). A court's determination of what property is marital or nonmarital is reviewed for clear error, and we will not disturb the determination if there is competent evidence in the record to support

---

3. Title 19 M.R.S.A. 722–A (1981 & Supp.1996) provided in pertinent part:

 **2. Definition.** For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage, except:

 **A.** Property acquired by gift, bequest, devise or descent;

 **B.** Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

 **C.** Property acquired by a spouse after a decree of legal separation;

 **D.** Property excluded by valid agreement of the parties; and

 **E.** The increase in value of property acquired prior to the marriage.

 **3. Acquired subsequent to marriage.** All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

it. *See Nilsen v. Hanson,* 1998 ME 109, ¶ 3, 709 A.2d 1190, 1191.

[¶ 15] Although "marital property" generally does not include the increase in value of property acquired before marriage, *see* 19 M.R.S.A. § 722–A(2)(E) (1981 & Supp. 1996), the marital estate does include the increase in value of separate property[4] attributable to marital effort or marital funds. *See Knowles v. Knowles,* 588 A.2d 315, 317 (Me.1991); *Macdonald v. Macdonald,* 532 A.2d 1046, 1050 (Me.1987). The burden of establishing that the value of separate property increased during marriage is on the party asserting the increase. *See Macdonald,* 532 A.2d at 1050. Once that party establishes that an increase in value occurred, the burden shifts to the opposing party to demonstrate that the increase resulted from the inherent value of the property and is not the product of marital effort or marital funds. *See, e.g., Nilsen,* 1998 ME 109, ¶ 5, 709 A.2d at 1191; *Williams v. Williams,* 645 A.2d 1118, 1122 (Me.1994); *Macdonald,* 532 A.2d at 1050; *see also* 19 M.R.S.A. § 722–A(3) (1981 & Supp.1996) (statutory presumption in favor of marital property). If the party fails to sustain the burden of establishing that the increase resulted from the inherent value of the property, the statutory presumption of section 722–A compels a finding that the increase in value of the property is marital. *See* 19 M.R.S.A. § 722–A(3) (1981 & Supp.1996); *see also Nilsen,* 1998 ME 109, ¶ 5, 709 A.2d at 1191; *Harriman v. Harriman,* 1998 ME 108, ¶ 8, 710 A.2d 923, 925.

[¶ 16] The court committed clear error when it failed to allocate the appreciation in the value of the Orono property to the marital estate. Sewall did not refute or deny that the value of the Orono property at the time of the purchase was the value of the note, $100,000. Given that renovations were made to the property during marriage and that the property value increased by $84,200 from the date of purchase, the burden shifted to Sewall to establish that the increase in value resulted from the increase in the inherent value of the property and not from marital effort or marital funds. *See Nilsen,* 1998 ME 109, ¶ 5, 709 A.2d at 1191; *Williams,* 645 A.2d at 1122; *Macdonald,* 532 A.2d at 1050. Sewall, however, did not offer any evidence concerning the increase in the value of the property. He failed to offer evidence that the property value increased because of its inherent value, nor did he offer evidence concerning the effect of the renovations on the value of the property. Given that there was no evidence in the record that the increase in value resulted from the inherent value of the property, the court committed clear error in failing to allocate this increase to the marital estate. *See* 19 M.R.S.A. § 722–A(3) (1981 & Supp.1996).

### B. Castine Property

[¶ 17] Sewall purchased the Castine property in October 1993, before his marriage. At the time, Sewall also owned property in Brooklin that his father gave him. To purchase the Castine property, Sewall took out a home equity loan on his Brooklin property. Sewall made monthly home equity payments of $2,000 from October 1993 to June 1995. Sewall sold the Brooklin property, and, in June 1995, he used the proceeds of the sale to retire the home equity loan. The court concluded that "[g]iven the origin of the property used to 'trade' for [the Castine] property, the court finds that it is nonmarital although a mortgage of around [$250,000] was paid off during the marriage."

[¶ 18] Saritvanich contends that the Castine property is marital because it was purchased prior to the marriage with money acquired from a home equity loan taken out on property owned in Brooklin and during the marriage payments were made on that loan. We disagree.

[¶ 19] "In situations where a spouse obtains title to real property before the marriage, but mortgage payments are made during the marriage, the property will include both marital and nonmarital components." *Williams,* 645 A.2d at 1120; *see also Nilsen,* 1998 ME 109, ¶ 5, 709 A.2d at 1191. For mortgage payments to generate marital property the payments must actually reduce

---

4. Separate property includes property acquired before marriage and property identified in 19 M.R.S.A. § 722–A(2)(A)–(E). *See Long v. Long,* 1997 ME 171, ¶ 9, 697 A.2d 1317, 1321.

the mortgage balance. *See Nilsen,* 1998 ME 109, ¶ 8, 709 A.2d at 1192 (Clifford, J., concurring); *Williams,* 645 A.2d at 1120. If a property is "acquired" during the marriage by making mortgage payments that reduce the mortgage balance, the acquisition triggers the statutory presumption of section 722–A that the property is to that extent at least marital. *See* 19 M.R.S.A. § 722–A(3) (1981 & Supp.1996); *Williams,* 645 A.2d at 1120. Once the party establishes that the property was "acquired" in part during the marriage, the burden shifts to the opposing party to demonstrate what portion of the increase in the value of the property is nonmarital. *See* 19 M.R.S.A. § 722–A(3) (1981 & Supp.1996); *Williams,* 645 A.2d at 1120.

 [¶ 20] The court did not commit clear error in finding that the Castine property was part of Sewall's nonmarital estate for two reasons. First, no mortgage existed on the Castine property. Second, there is no evidence that the payments made during the marriage reduced the mortgage balance on the Brooklin property. *See Nilsen,* 1998 ME 109, ¶ 8, 709 A.2d at 1192 (Clifford, J., concurring); *Williams,* 645 A.2d at 1120. Because there is no evidence that marital funds were used to acquire the Castine property, the court did not commit clear error in allocating the Castine property to Sewall's nonmarital estate.

### III. VALUATION OF MARITAL PROPERTY

[¶ 21] The court concluded that Sewall's common stock in the Sewall Company was nonmarital, but that the appreciation of the stock during marriage was marital property. Sewall does not contest this finding. Saritvanich argues that the court erred in its valuation of the appreciation of Sewall's stock in the Sewall Company. We disagree.

 [¶ 22] We review a court's determination of the value of marital property for clear error. *See Peters,* 1997 ME 134, ¶ 14, 697 A.2d at 1258. In reviewing the court's determination, "we will let stand any estimate within the range of expert opinion reached by the court through an independent review of the evidence." *Findlen v. Findlen,*

1997 ME 130, ¶ 12, 695 A.2d 1216, 1219; *see Shirley v. Shirley,* 482 A.2d 845, 849 (Me. 1984). Here, one accountant testified that the value of Sewall's stock appreciated by $550,000. A second accountant concluded that the stock appreciated by $750,000. The court's finding that the value of the stock appreciated by "at least" $550,000 was reached through an independent review of the evidence and was within the range of expert opinion, therefore, the court did not commit clear error. *See Findlen,* 1997 ME 130, ¶ 12, 695 A.2d at 1219.

### IV. DISPOSITION OF THE MARITAL ESTATE

[¶ 23] Saritvanich challenges the division of the marital estate, arguing that the court erred when it awarded her only $75,000. Because the increase in value of the Orono property will increase the size of the marital estate, the court must reconsider and reassess its division on remand.

### V. SPOUSAL SUPPORT

[¶ 24] Saritvanich argues that the court abused its discretion in not awarding spousal support because of the disparity in the parties' relative earning capacity and the value of the parties' nonmarital estates. Sewall contends that the court correctly refused to award spousal support because of the short length of the marriage, *see* 19 M.R.S.A. § 721(1)(A) (Supp.1996), *repealed and replaced by* P.L.1995, ch. 694, §§ B–1, B–2 (effective Oct. 1, 1997), *codified as* 19–A M.R.S.A. § 951(1)(A) (1998), Saritvanich's relatively young age, *see id.* § 721(1)(C), Saritvanich's capacity to earn based on her past experience in owning a convenience store, *see id.* § 721(1)(E), and Saritvanich's substantial net worth based on the equity in her Old Town house, the $20,000 received from Sewall to apply to the mortgage on that house, the value of the note from the sale of her convenience store, and her $75,000 share of the marital estate, *see id.* § 721(1)(O).

 [¶ 25] On the record before it, the court did not commit clear error in refusing to award Saritvanich spousal support. Here, however, because we vacate the entire judg-

ment, the court must reconsider this issue of spousal support. On remand and in this regard, the court should at least consider the testimony regarding Sewall's alleged promises to pay for Saritvanich's medical expenses that she incurred, and will likely continue to incur, as a result of a medical condition for which Sewall may be responsible. This testimony is relevant to an award of spousal support *See* 19 M.R.S.A. § 721(1)(I) (court shall consider the health and disabilities of each party when determining an award of spousal support).

[¶ 26] Because the allocation of the increased value of the Orono property could impact the economic provisions in the divorce judgment, we direct the court on remand to reconsider the fairness of all the provisions of the judgment. On remand, the court may, in its discretion, open the record to allow the parties to introduce additional evidence.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the District Court for further proceedings consistent with this opinion.