MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2023 ME 54
Docket:      Yor-22-205
Argued:      December 7, 2022
Decided:     August 17, 2023

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

SARAH R. BOLDUC

v.

DANIEL J. BOLDUC

LAWRENCE, J.

[¶1]  Daniel J. Bolduc appeals from a divorce judgment, entered by the District Court (York, *D. Driscoll, J.*) on March 30, 2022, awarding Daniel $35,500 of the marital equity in the real estate owned by Sarah R. Bolduc and her father as joint tenants.  Daniel argues, in part, that the court erred when it valued the real estate as of the date the parties separated rather than the date the parties divorced.  We vacate the divorce judgment with respect to the court's valuation and division of the marital equity in the real estate and remand to the court to value the real estate as of the date of the divorce, based on its own independent assessment of the evidence in the record, and, thereafter, equitably divide the parties' marital estate.  We affirm the judgment in all other respects.

## I. BACKGROUND

[¶2]  The court found the following facts, which are supported by competent evidence in the record.  *Whitmore v. Whitmore*, 2023 ME 3, ¶ 3, 288 A.3d 799.  Daniel and Sarah were married on September 6, 2014, and are the parents of one child.  On December 30, 2015, Sarah and her father, William "Mark" Foster, purchased real estate in York, Maine, as joint tenants.  Foster provided the entire $50,000 down payment for the purchase of the real estate.[1]  Following the purchase, Daniel and Sarah used the real estate as their marital home and paid the mortgage using funds from their collective marital efforts.  In March 2019, Daniel left the marital home and thereafter did not make any payments toward the mortgage or pay any house-related expenses.  On March 28, 2019, Sarah filed for divorce.  The court granted the parties' divorce, after trial, on March 29, 2022.

[¶3]  Prior to trial, the parties each obtained an appraisal of the real estate.  Sarah's appraisal valued the real estate at $320,000 as of March 26, 2019.  Daniel's appraisal valued the real estate at $382,500 as of October 27, 2021.  Both appraisals were admitted in evidence without objection.

---

[1]  The court found that Foster's contribution of the down payment did not constitute a gift.

[¶4]   The court concluded that Foster and Sarah, as joint tenants, each owned a one-half interest in the real estate.  Pursuant to the statutory marital property presumption,[2] the court found that the value of Sarah's interest in the real estate was marital property and subject to division in the divorce action. The court determined that, because the balance of the mortgage on the real estate was reduced by mortgage payments made by the parties and the parties created equity in the real estate through this marital effort, some of the real estate's equity was part of the marital estate and subject to division in the parties' divorce action.  In addition, the court found that Daniel failed to provide any evidence from which the court could determine by how much his alleged renovations to the marital residence increased the real estate's value after it was acquired.

[¶5]   The court elected to value the real estate using the March 2019 appraisal of $320,000 solely because "Sarah became responsible for the mortgage payments after the separation" and, therefore, it was "reasonable to value the marital [equity in the real estate] at the time Daniel vacated the

---

[2]  The court applied the marital property presumption by relying on our precedent.  *See, e.g.*, *Coppola v. Coppola*, 2007 ME 147, ¶ 20, 938 A.2d 786; *Sewall v. Saritvanich*, 1999 ME 46, ¶ 19, 726 A.2d 224; *Williams v. Williams,* 645 A.2d 1118 (Me. 1994).  This presumption is also set out at 19-A M.R.S. § 953(3) (2023) ("All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy . . . .").

4

property, stopped [contributing to] mortgage payments or other expenses, and the divorce action was initiated." The court then reduced the real estate's $320,000 appraised value by the mortgage balance of $178,000, leaving $142,000 of total equity in the real estate. The court reasoned that, in view of the joint tenancy of Foster and Sarah, the marital equity in the real estate was $71,000 (i.e., one-half of the total equity in the real estate). The court then divided in half the marital equity in the real estate, awarding $35,500 to Sarah and $35,500 to Daniel.[3]

[¶6] After the court entered its divorce judgment on March 29, 2022, Daniel filed a motion for further findings of fact and conclusions of law. The court denied Daniel's motion, and Daniel timely appealed. *See* M.R. App. P. 2B(c)(1), (2)(B); M.R. Civ. P. 52(b).

## II. DISCUSSION

[¶7] Daniel argues that the court erred in its assessment of the marital equity in the real estate by not considering that Foster's interest in the real estate, as a joint tenant, was subject to change based on the parties' subsequent

---

[3] The court thereafter reduced Daniel's $35,500 portion by his share of marital debt, an IRS garnishment of a tax refund to the parties because of Daniel's unpaid child support for his older child from another relationship, and Sarah's marital interest in an insurance payment Daniel received for a totaled truck. The court ordered that Sarah pay Daniel the remaining $10,900 of his share of the marital equity within ninety days of the judgment.

contributions to the marital home.[4] Daniel also asserts that the court erred by using the March 2019 appraisal of the home rather than the October 2021 appraisal, which was obtained closer to the time of the parties' divorce.

[¶8] We review for clear error the court's factual findings, including determinations about a property's value or a property's classification as marital or nonmarital. *Laqualia v. Laqualia*, 2011 ME 114, ¶ 10, 30 A.3d 838; *Nadeau v.*

---

[4] Daniel also contends, in part, that the court erred by awarding Foster a one-half interest in the real property because Foster was not a party to the divorce action and the court therefore lacked jurisdiction to determine Sarah's and Foster's interests. We disagree.

We have recently explained,

> The jurisdiction of the divorce court is purely statutory, and its authority to act on matters of divorce must arise out of the statutory law or not at all. . . . [*A*] *court is authorized to divide marital property* in proportions the court considers just after considering all relevant factors. It is presumed that all property acquired by [either] spouse subsequent to the marriage and prior to a decree of legal separation is marital property.

*Dobbins v. Dobbins*, 2020 ME 73, ¶ 12, 234 A.3d 223 (emphasis added) (alterations, citations, and quotation marks omitted). As explained *infra*, here the court appropriately applied the marital property presumption and correctly classified as marital property the value of the equity Sarah held with her one-half interest in the real estate. Thus, contrary to Daniel's contention, the court had jurisdiction over Sarah's one-half interest in the real estate, and it was required to equitably divide that marital property. *See* 19-A M.R.S. § 953(1)-(3); *Howard v. Howard*, 2010 ME 83, ¶ 11, 2 A.3d 318 ("In a divorce proceeding, the District Court has subject matter jurisdiction to determine the ownership interests of the spouses in order to divide their marital property."). Because Foster was not a party to the divorce action, the court had no personal jurisdiction over him. *See Howard*, 2010 ME 83, ¶ 12, 2 A.3d 318. Accordingly, pursuant to section 953, Foster's one-half interest in the real estate was not part of the marital estate at the time of the divorce, nor was it subject to distribution or award by the court. The court also had no jurisdiction to order a sale or other disposition of the real estate itself, only the parties' interest in it. *See Littell v. Bridges*, 2023 ME 29, ¶ 13, 293 A.3d 445 (explaining that, although the court lacked jurisdiction over a company owned by the spouses and thus could not dissolve the company, it had jurisdiction over the spouses' membership interests in the company and could equitably divide that interest). Finally, the court's findings with respect to the marital interest in the real estate would not have any preclusive effect against Foster in the event his and Sarah's ownership interests in the real estate might be at issue in some future action. *See Fiduciary Tr. Co. v. Wheeler*, 2016 ME 26, ¶ 10, 132 A.3d 1178.

6

*Nadeau*, 2008 ME 147, ¶ 42, 957 A.2d 108.  A finding is clearly erroneous if it is unsupported by competent evidence in the record.  *Laqualia*, 2011 ME 114, ¶ 10, 30 A.3d 838.  "[W]e review the court's distribution of [marital] property for an abuse of discretion."  *Id.* (alteration and quotation marks omitted).  We have long recognized a three-step process that a court must follow in equitably distributing marital property in a divorce proceeding: (1) "distinguish marital from nonmarital property"; (2) "set apart nonmarital property"; and (3) "divide marital property in such proportion as the court deems just."  *Id.* ¶ 13 (quotation marks omitted).

## A.    Distinguishing Marital from Nonmarital Property

[¶9]  The classification of property as marital or nonmarital is controlled by statute, and there is a marital property presumption that applies to property that is acquired after parties are married.  *See* 19-A M.R.S. § 953(3) (2023).  Pursuant to section 953(3), "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy."[5]

---

[5]  A party may overcome the marital property presumption by demonstrating that the property in question falls within one of the exceptions enumerated in 19-A M.R.S. § 953(2).  Neither party contends that any of these exceptions applies in this case.

[¶10]   In general, joint tenants initially hold an undivided one-half interest in the property, even if their initial contributions may have been unequal.  *See, e.g., Bradford v. Dumond,* 675 A.2d 957, 961 (Me. 1996); *Boulette v. Boulette*, 627 A.2d 1017, 1018 (Me. 1993); *Ackerman v. Hojnowski*, 2002 ME 147, ¶¶ 10-11, 804 A.2d 412.  We have, however, consistently explained that, when a court is equitably dividing real property, it should consider "all equities" growing out of the joint tenancy relationship, including the contributions that the parties have made after the formation of the joint tenancy.  *Ackerman*, 2002 ME 147, ¶¶ 11-12, 804 A.2d 412 (quotation marks omitted).

[¶11]  In this case, the court correctly found that the value of the equity Sarah held in the real estate was marital property subject to division.  The real property was acquired by Sarah and Foster, as joint tenants, after the parties were married, thereby triggering the marital property presumption of section 953(3).  Moreover, our review of the record leads us to conclude that the court correctly found that Daniel failed to provide any evidence from which the court could determine by how much his alleged renovations increased the real estate's value after it was acquired.  We therefore also conclude that the court

8

did not err in finding that Sarah is a joint tenant with an equal, undivided interest in the real estate.[6]

## B.     Division of Marital Property

[¶12]   Before the court equitably divides marital property in the third step of the equitable distribution process, it must first determine the marital property's value by conducting an independent review of the evidence presented by the parties. *See Findlen v. Findlen*, 1997 ME 130, ¶ 12, 695 A.2d 1216 ("[W]hen the court is presented with two appraisals as to the value of property . . . we will let stand any estimate within the range of expert opinion reached by the court through an *independent review of the evidence.*" (emphasis added)); *Shirley v. Shirley*, 482 A.2d 845, 849-50 (Me. 1984) (affirming a judgment where the court's "decision to rely on [a] more recent appraisal . . . was based on [its] own independent assessment and [was] adequately supported by [sufficient evidence in the record]").[7]   Our holdings also suggest that a court must determine the value of marital property as of a date as near

---

[6]   Because the parties do not contend that the court erred in setting apart nonmarital property, we need not consider whether the court properly applied the second step of the equitable distribution process.

[7]   Although not limited to such considerations, an independent assessment of valuation evidence may include weighing the substance of competing appraisals; the methodologies used to create the appraisals; and the appraiser's credibility, credentials, and familiarity with the subject market.

as practicable to the date of the property division.[8] *See* Levy, *Maine Family Law* §§ 7.2[2], 7.8[1] (8th ed. 2013); *Crooker v. Crooker*, 432 A.2d 1293, 1297 (Me. 1981) (explaining that the court does not need to "indulge in speculation" by considering possible future events and that "[t]he value of marital assets should be determined *as of the time they are distributed*" (emphasis added)); *Austin v. Austin*, 2000 ME 61, ¶ 7, 748 A.2d 996 (discerning error where the court "fix[ed] the date of valuation as the date of the decree, rather than *the date of the actual division of the asset*" (emphasis added)).

[¶13]  Here, although the court did not err in applying the first two steps of the equitable distribution process, it erred as of a matter of law in its application of the third step by, in effect, applying equitable principles to determine the marital property's value.  The parties submitted two appraisals that were conducted approximately 2.5 years apart and reflected a $62,500 difference in value between the earlier appraisal and the later one.  The court found that it was reasonable to value the marital equity in the real estate as of March 2019, the date of the parties' separation, because that was when Daniel vacated the property, the divorce action was filed, Daniel stopped contributing

---

8  There may be, however, circumstances in which, based on an independent assessment of the appraisal evidence provided by the parties, the court appropriately finds that an older appraisal provides a more credible analysis of the value to assign to the marital property.

10

to the household expenses, and Sarah became responsible for the mortgage payments. The court's valuation of the marital equity in the real estate, however, did not include findings related to its independent assessment of the two appraisals. Although the court was rightfully concerned about the timing and circumstances surrounding the parties' separation, these considerations should have been applied only *after* the court determined the value of the marital equity in the real estate based on its own independent assessment of the two appraisals in evidence. The court's decision to value the marital equity in the real estate as of the date of separation rather than the date of divorce was therefore an error of law.[9] *Cf. Moran v. Moran*, 2022 ME 43, ¶¶ 17-21, 20 n.7, 279 A.3d 385 (discerning error where the court valued a retirement account as of the date of the parties' de facto separation rather than the date of the parties' divorce because, in doing so, the court "implicitly found" that any increase in the account's value would be nonmarital, and "[t]he duration of the marriage is

---

[9] Moreover, we cannot infer findings from the evidence in this record and we cannot assume that the court would have relied on the earlier appraisal if it had valued the property as of the date of the parties' divorce. *See Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101 ("[W]hen a motion for findings [pursuant to M.R. Civ. P. 52] has been timely filed and denied, we cannot infer findings from the evidence in the record. . . . [I]f the judgment does not include specific findings that are sufficient to support the result, appellate review is impossible and the order denying findings must be vacated." (alterations and quotation marks omitted)). We therefore cannot say that the court's error was harmless. *See* M.R. Civ. P. 61.

not a relevant factor" for the court to consider when "determining whether property is marital or nonmarital").

[¶14]  We therefore vacate the divorce judgment with respect to the court's valuation and division of the marital equity in the real estate and remand for the court to determine the value of the marital equity in the real estate at the time of the divorce and not the separation, based on its independent assessment of the appraisal evidence in the record.  After such valuation, the court must apply section 953(1) to equitably divide the parties' marital property.  If the court determines it is necessary, it may, in its discretion, reopen the record on remand.

The entry is:

> Order denying findings and portion of the judgment regarding the valuation and division of marital property vacated.  Judgment affirmed in all other respects.  Remanded for further proceedings in accordance with this opinion.

---

Robert A. Levine, Esq. (orally), Portland, for appellant Daniel J. Bolduc

Pamela Holmes, Esq. (orally), and Mary-Ann Letourneau, Esq., Holmes Legal Group, LLC, Wells, for appellee Sarah R. Bolduc