**Mary Ann GRAY**

v.

**Gordon E. GRAY.**

Supreme Judicial Court of Maine.

Argued March 20, 1992.

Decided May 26, 1992.

Laurie Kadoch, Patricia Nelson–Reade (orally), Verrill & Dana, Portland, for plaintiff.

Robert W. Harrington (orally), Boston, Mass., for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Gordon Gray appeals from a divorce judgment entered in the Superior Court (Cumberland County, *McKinley, A.R.J.*). Gordon contends that the court erred in the value it placed on the businesses he operates and in its determination that those businesses had marital as well as nonmarital components, and abused its discretion in dividing the marital component of that property. Gordon further contends that the court abused its discretion in awarding

alimony and attorney fees to Mary Ann Gray. We discern no abuse of discretion and, except for a mathematical calculation in the amount of attorney fees, no error. Accordingly, after modifying the award of attorney fees, we affirm the judgment.

Gordon and Mary Ann began living together in May of 1980, and married in February 1983. They separated in July 1986, and Mary Ann brought the within divorce action in March of 1988.

Gordon has considerable experience in the insurance industry and was part owner and employee of an insurance related business in Massachusetts before moving to Maine and living with Mary Ann. During their period of cohabitation prior to marriage, Gordon experienced financial difficulties. He started up businesses, most notably Group Marketing Services, Inc. and Key Benefits Network d/b/a Benefit Management of Maine, Inc.,[1] working out of the home owned by Mary Ann. Mary Ann, an executive at UNUM, provided guidance and acted as a sounding board for ideas in the development of the new ventures. When the businesses progressed to the point where Gordon moved their operation out of Mary Ann's home and into rented office space, Mary Ann executed a mortgage on her home in order that office furniture could be purchased.

At the time the parties were married in 1983, both were pursuing full-time careers; Gordon managing his companies, and Mary Ann as an executive with UNUM. During the first year of the marriage, Gordon earned about $36,000 and Mary Ann about $33,000. At the time of the divorce, in early 1991, Gordon was earning about $300,000, while Mary Ann's salary was about $55,000–60,000. They purchased real estate and a home on Sheehan Island in Raymond, and Gordon acquired an ownership interest in a South Portland condominium. Gordon also acquired Fast Pace Stables during the marriage.[2]

The court determined the value of Gordon's business enterprises to be $900,000,[3] $400,000 of which the court found to be marital. Of the $400,000 marital component, the court set aside $100,000 to Mary Ann, and the balance to Gordon. The court also awarded alimony to Mary Ann in the amount of $1500 per month and further ordered Gordon to pay attorney fees and expenses incurred by Mary Ann in the divorce proceedings in the amount of $52,-725.44. Gordon filed a timely appeal from the Superior Court judgment.

I.

## VALUATION AND ALLOCATION OF BUSINESS INTERESTS

Gordon contends that the divorce court erred in the value it placed on Gor-

---

1. Gordon also had interests in other business entities that spun off those first two: Healthshare Benefits, Inc.; Pay Power (a limited partnership); Benefit Advantage; and Gordon E. Gray Associates, Inc.

2. Mary Ann's Portland home purchased prior to the marriage and certain property owned in Massachusetts that Gordon acquired prior to the marriage was determined to be nonmarital. Gordon's ownership interest in the Spring Point Marina condominium in South Portland was determined to be marital property and was set aside to him. The court found the Sheehan Island home to be marital property and set apart the home itself to Gordon, but ordered equal division of the $191,000 net equity in the property with Gordon to pay Mary Ann $95,500 over time. Gordon's interest in Fast Pace Stables, valued at $92,950 and determined to be marital property was set apart to Gordon alone.

The parties do not challenge these determinations by the court.

3. The record discloses that during discovery Gordon was uncooperative concerning disclosure of his financial interests in numerous business entities. In December 1989, the Superior Court (*Bradford, J.*) issued an order requiring Gordon and his expert appraiser, David Hawkes, to provide Mary Ann's expert, Jack Ketchum, with any information necessary to objectively evaluate Gordon's businesses. Mary Ann asserted that the information had not been provided. The court granted Mary Ann's motion *in limine* to exclude, because of lack of cooperation by Gordon in discovery, the appraisal report of Hawkes because it was based in part on information submitted two days before trial and not supplied earlier. The court generally excluded evidence proffered by Gordon as to the value of his businesses subsequent to November 1989.

don's business entities, erred in its determination that $400,000 of that value was marital property, and in any event, set aside an excessive portion of that amount to Mary Ann. Although the court excluded certain valuation evidence submitted by Gordon shortly before trial,[4] there was extensive evidence, most in the form of expert testimony, presented by both parties relative to the value of Gordon's business interests. Jack Ketchum, Mary Ann's expert witness, testified that the value of those businesses was $1,300,000. David Hawkes, the expert retained by Gordon, testified to a substantially lower value. The court found the value of all of Gordon's businesses to be $900,000.[5] The court further found that of the $900,000, $400,000 represented the increase in value of the business entities during the marriage and was marital property. Of the $400,000, the court set aside $100,000 to Mary Ann, and $300,000 to Gordon.

 A divorce court's determination of what property is marital and what is nonmarital is reviewed for clear error and will not be disturbed if there is competent evidence in the record to support it. *West v. West*, 550 A.2d 1132, 1133 (Me.1988). The record discloses no clear error in the court's finding the value of Gordon's businesses to be $900,000. The court correctly recognized that the valuation of closely held business interests is not an exact science. The value determined by the court is within the range of value evidence presented at trial. *See Shirley v. Shirley*, 482 A.2d 845, 849 (Me.1984) (finding value within range of expert opinion is valid provided conclusion reached through independent view of evidence). We give due regard to the opportunity of the trial court to judge the credibility of the witnesses and weigh the evidence. *See Mattson v. Mattson*, 376 A.2d 473, 476 (Me.1977); M.R.Civ.P. 52(a).

 Nor did the court clearly err in finding that $400,000 of the value of the businesses is attributable to their growth during the marriage. There is ample evidence that the businesses grew rapidly during the period of the marriage. Financial statements for Benefit Management, Inc. and Group Marketing Services, Inc. signed by Gordon in 1983 (the year of the marriage) place values on the businesses of $550,000. A 1984 statement gives a value of over $1 million, and a 1988 statement sets a value of over $2 million. The court found that the increase in value of the businesses during the marriage resulted primarily from the efforts of Gordon rather than from the inherent value of the property itself. Such an increase in value of otherwise separate property during the marriage attributable to marital effort is considered marital property subject to distribution. *MacDonald v. MacDonald*, 532 A.2d 1046, 1049–50 (Me.1987). Gordon's additional contention that the court's finding is based on faulty financial data is unpersuasive, especially in view of Gordon's failure to provide complete and timely financial information in regard to his business interests.

 Gordon also argues that the $100,000 set aside to Mary Ann from the $400,000 of the value of the businesses found to be marital is excessive. Pursuant to 19 M.R.S.A. § 722–A(1) (1981), the court is directed to divide marital property "in such proportions as the court deems just, after considering all relevant factors." Among those factors are the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker, (section 722–A(1)(A)), the value of the property set aside to each spouse (section 722–A(1)(B)), and the economic circumstances of each spouse at the time of the division (section 722–

---

4. On this record, we discern no abuse of discretion in the court's decision to exclude certain evidence as to the value of the businesses proffered by Gordon because the court found Mary Ann had insufficient notice.

5. The court found $900,000 to be the value of all of Gordon's business interests, recognizing that there was no testimony as to the value of Pay

Power (limited partnership), Benefit Advantage, or Gordon E. Gray Associates, Inc. Jack Ketchum, Mary Ann's expert, appraised Benefit Management, Inc., Gray Marketing Services, Inc., and Healthshare Benefits, Inc. at $1,300,000. David Hawkes, Gordon's expert, did not value Healthshare Benefits, Inc.

A(1)(C)). The court's disposition of marital property is reviewed for abuse of discretion. *Axtell v. Axtell,* 482 A.2d 1261, 1263 (Me.1984). In this case, in view of the value of property set aside to each spouse, and the disparity in income between the parties, the court's distribution to Mary Ann of an amount equal to twenty-five percent of the value of Gordon's businesses found to be marital property does not constitute an abuse of discretion.

## II.

## ALIMONY

■■■■ Gordon contends that because Mary Ann has a financially secure career and earns $60,000 per year, has a vested interest in a pension plan, and owns a considerable amount of property (partly as a result of the divorce distribution), she is able to support herself and has no need for financial help from Gordon, at least not in the amount of $1500 per month. Gordon contends that this case is markedly different from that of a wife who has no career and few, if any, marketable skills. Accordingly, Gordon argues that it was an abuse of discretion for the court to award alimony. We disagree. A divorce court is vested with broad powers to order one spouse to pay alimony to the other if the amount is reasonable and takes into account the paying spouse's ability to pay. *Jacobs v. Jacobs,* 507 A.2d 596, 600 (Me.1986). In viewing alimony awards we defer to the discretion of the trial court unless "the court has violated some positive rule of law or has reached a result which is plainly and unmis-

takably an injustice that is 'so apparent as to be instantly visible without argument....' " *Bryant v. Bryant,* 411 A.2d 391, 395 (Me.1980) (quoting *Capron v. Capron,* 403 A.2d 1217, 1218 (Me.1979)).

■■■■ Although we agree with Gordon that the essential underlying purpose of alimony is the maintenance and support of the payee spouse, *Skelton v. Skelton,* 490 A.2d 1204, 1207 (Me.1985), 19 M.R.S.A. § 721(1) (Supp.1991) sets out the many factors that a divorce court must take into account in determining whether and in what amount alimony should be awarded.[6] The divorce judgment in this case reflects that the court considered those factors. The judgment refers to the disparity between the parties in earning and in property distribution and the "very high life style" enjoyed by the parties during their marriage. The judgment also notes Gordon has continued such a life style following their separation. The earning potential, ability to pay, contributions of one party to the other's earning potential, and standard of living enjoyed during the marriage are all legitimate factors to be considered by the court, as they were in this case. There is evidence in the record that Mary Ann helped Gordon to get a start in his businesses and thus contributed to his earning potential. While alimony might not be necessary for the bare "support" of Mary Ann, it would help her to maintain the standard of living she enjoyed during the marriage. The award of alimony to Mary Ann is not such a plain and unmistakable injustice as to be " 'instantly visible

---

**6.** 19 M.R.S.A. § 721(1) (Supp.1991) provides as follows:

 **1. Factors.** The court shall consider the following factors when determining an award of alimony.

 **A.** The length of the marriage;
 **B.** The ability of each party to pay;
 **C.** The age of each party;
 **D.** The employment history and employment potential of each party;
 **E.** The income history and income potential of each party;
 **F.** The education and training of each party;
 **G.** The provision for retirement and health insurance benefits of each party;
 **H.** The tax consequences of the division of marital property, including the tax conse-

quences of the sale of the marital home, if applicable;
 **I.** The health and disabilities of each party;
 **J.** The tax consequence of an alimony award;
 **K.** The contributions of either party as homemaker;
 **L.** The contributions of either party to the education or earning potential of the other party;
 **M.** Economic misconduct by either party resulting in the diminution of marital property or income;
 **N.** The standard of living of the parties during the marriage; and
 **O.** Any other factors the court considers appropriate.

without argument.' " *Bryant,* 411 A.2d at 395 (quoting *Capron,* 403 A.2d at 1218).[7]

### III.

### ATTORNEY FEES

 Gordon contends that the award of attorney fees and costs to Mary Ann was excessive and improper.[8] We review an award of attorney fees in a divorce action under an abuse of discretion standard. *See Bryant,* 411 A.2d at 395; *see also* 19 M.R.S.A. § 722(3) (1981). In awarding costs and attorney fees, the court considered the ability of each party to absorb the costs of litigation, *Lagarde v. Lagarde,* 437 A.2d 872, 876 (Me.1981), and the record supports the court's finding that Gordon is in a superior economic position to that of Mary Ann. Moreover, Gordon's conduct during the litigation, particularly his failure to cooperate in discovery, increased the legal costs incurred by Mary Ann. The court acted within its discretion in ordering Gordon to pay attorney fees and costs incurred by Mary Ann.

The entry is:

Judgment modified to reflect attorney fees and costs awarded to plaintiff in the amount of $50,718.44, and, as modified, affirmed.

All concurring.

---

7. We are unpersuaded by Gordon's additional argument that the court's finding of economic misconduct made in support of the alimony award is error. Economic misconduct that results in diminution of the marital estate is a relevant factor to be considered in awarding alimony. 19 M.R.S.A. § 721(1)(M). There was evidence that Gordon lost over $57,000 gambling. Moreover, economic misconduct was only one of many factors considered by the court in its determination of the alimony award.

8. Gordon is correct in pointing out the affidavits submitted by Mary Ann establish the amount of fees and costs incurred by Mary Ann to be $50,718.44, and not $52,725.44. The judgment will be modified to reflect that change of $2007.