1997 ME 134

**Carol A. PETERS**

v.

**Donald R. PETERS.**

Supreme Judicial Court of Maine.

Argued May 12, 1997.
Decided June 24, 1997.

Peter L. Murray (orally), Law Office of Peter L. Murray, Michael D. Traister, Ann M. Courtney, Murray, Plumb & Murray, Portland, for plaintiff.

John A. Graustein (orally), Deirdre M. Smith, Drummond, Woodsum & MacMahon, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and RUDMAN, JJ.

DANA, Justice.

[¶ 1] Carol Peters appeals from a judgment entered in the Superior Court (Cumberland County, *MacNichol, J.*) granting her a divorce from Donald Peters. Carol contends that the court abused its discretion when it denied her motion for further findings of fact, distributed the marital property, awarded alimony, and refused to award Carol her attorney fees, and that it erred when it found that Donald did not violate the preliminary injunction imposed pursuant to 19 M.R.S.A. § 692–A(1)(B)(1) (Supp.1996). We affirm the judgment.

[¶ 2] Donald and Carol Peters were married in 1961. Carol stayed at home to care for their two children while Donald built a real estate construction and development business. In 1968, Donald incorporated his business as Donalco, Inc., and it thrived. He acquired several investment properties in and around Portland, some of which he used for rental units. In the mid 1980s, Donald and two other individuals created another corporation, Ariel Corporation, and started doing development work in the Augusta area. Donald also developed partnership interests in two housing projects known as "North School housing" and "Stratford County housing," and created Main Street Autos, which owns a collection of vehicles. Donald bought

two parcels of land in Eustis and built a house there. At the time of the divorce, Donald owned several rental properties in Portland. Donalco also owned property, but according to Donald's testimony at the divorce hearing, the business was suffering due to the economic downturn of the late 1980s and early 1990s. At the time of the divorce, Donalco did not have the credit, equipment, or employees to enable the company to bid on construction jobs.

[¶ 3] Donald recently acquired a $225,000 home equity loan from Fleet Bank and has been using the money to maintain the rental properties and pay his own living expenses. His 1994 tax return reflects a net taxable income of $20,284.

[¶ 4] The parties obtained a divorce in 1979 but remarried nine months later. They separated again in 1985 and Carol moved to Florida. Donald bought the condominium that Carol was renting and later bought another condominium on Key Biscayne. While Carol was living in Florida, Donald paid all of her expenses. He sent her $450 per week, and on the last week of every month sent her a check for $1400. He also provided her with a credit card and medical insurance. Donald stopped sending money to Carol after she filed for the divorce, asserting that he had run out of money; the last three or four checks that he sent to her came out of the funds from his home equity loan.

[¶ 5] Donald made several property transfers after Carol filed for divorce. He transferred the Eustis property to their son in October 1994, ostensibly to avoid the reach of creditors. The gift tax return stated that the property's value was $217,000. Donald testified that he sent a copy of the conveyance to Carol prior to the transfer and when she did not respond he completed the transfer. In June 1995 Donald sold one of the rental properties on Carleton Street in Portland for $150,000, and another unit on Harrison Street for $75,000. According to Donald, Fleet Bank requested that he sell those properties and apply the proceeds to the mortgages. At the time, Donald was trying to get a line of credit from Fleet Bank.

[¶ 6] At the divorce hearing, Carol presented a personal financial statement dated June 1995 that Donald submitted to Fleet Bank in his attempt to obtain financing. The statement included values for Donald's assets including real estate, stocks, accounts, notes receivable, life insurance, and personal property, and also listed his liabilities. Some of the values provided in the statement were based on Donald's own estimates while others were based on prior appraisals. According to Donald, he prepared the statement himself without the aid of an accountant because Fleet Bank told him it needed a statement as a formality and was going to independently appraise the property. Donald testified that the statement "was a very optimistic, hopeful, desperate attempt to keep financing going."

[¶ 7] Donald presented a somewhat different financial picture at the divorce hearing than that portrayed by the financial statement submitted to the bank. According to his testimony, Donalco is not operating and he is currently using the proceeds of the home equity loan for his living expenses. The notes payable from several of his business interests, such as a $900,000 note from Ariel Corporation, are worthless because the businesses are insolvent and unable to make payments. He also testified that his partnership interests in the housing projects are worth nothing. All of his personal real estate except the two condominiums in Florida and the property in Eustis is mortgaged and cross-collateralized to Fleet Bank. Donald is personally liable for one-third of Ariel Corporation's debt. He submitted tax returns and financial statements indicating that Ariel Corporation's investments are also not doing well. All of the income from the rental units goes to pay the mortgages and he subsidizes their operation with the proceeds from his home equity loan. Donald testified at length about the values on his June 1995 personal financial statement. He stated that many of the properties for which he provided different values at the hearing had been reappraised by Fleet after he submitted the statement.

[¶ 8] Carol argued at the hearing that the court should make her and Donald co-owners of all of the marital property, but the court divided the marital property as follows: Car-

ol received the unencumbered condo in Florida in which she lives, and half of the interest in the Eustis property. Donald received everything else and all the marital debts. The court awarded Carol the Key Biscayne condo, worth about $100,000, as lump sum alimony, along with $1 per year as periodic alimony. The court declined to order Donald to pay Carol's attorney fees amounting to over $40,000.

### I.

[¶ 9] Carol contends the trial court's judgment lacks findings sufficient for effective review because the court failed to make specific findings regarding marital net worth, the values of certain assets, and the parties' entitlements to various assets, and that the court abused its discretion when it denied her motion for further findings of fact and conclusions of law.

 [¶ 10] "The divorce court has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." *Bayley v. Bayley,* 602 A.2d 1152, 1153–54 (Me.1992) (citation omitted). "[W]e have consistently stated the need for the divorce court to assign specific values to marital property, both to 'make the result more comprehensible for the litigants and ... [t]o facilitate appellate review as often as such review may become necessary.'" *Murray v. Murray,* 529 A.2d 1366, 1368 (Me.1987) (quoting *Grishman v. Grishman,* 407 A.2d 9, 12 (Me.1979)).

 [¶ 11] When, as here, a party moves for specific findings of fact and conclusions of law, "we will not assume the divorce court made the necessary findings to support its judgment." *Bayley,* 602 A.2d at 1154. If the court does not make the requested findings, "and the divorce judgment does not contain adequate findings on the contested issues, intelligent review is impossible and

the denial of a motion for further findings of fact is an abuse of discretion." *Id.*

 [¶ 12] The court acted within its discretion by denying Carol's motion for findings of fact and conclusions of law because the court's judgment contains adequate findings. The court's judgment makes findings and assigns specific values to Donald's business interests, the couple's real estate and accompanying encumbrances, the couple's personal property, their debts to attorneys, Donald's personal liability on outstanding debts to businesses, and the parties' income history and earning capacities. These findings are sufficient to inform the parties of the court's reasoning and allow for our review.[1] Furthermore, Carol's motion for further findings of fact did not seek specific findings on any particular issue;[2] given the court's extensive findings provided in its judgment and Carol's failure to assert that the judgment was inadequate on any particular issue, the court acted within its discretion by denying her motion.

### II.

 [¶ 13] Carol contends that the court failed to value accurately the marital property. She asserts that the court should have relied on Donald's personal financial statement submitted to Fleet Bank in June 1995 rather than on Donald's testimony during the hearing.

 [¶ 14] We review a divorce court's determination of the value of marital property for clear error. *See Gray v. Gray,* 609 A.2d 694, 697 (Me.1992); *Cole v. ·Cole,* 561 A.2d 1018, 1020 (Me.1989). "The value determined must reflect a reasoned evaluation by the court of all of the evidence." *Cole,* 561 A.2d at 1020 (citation omitted). Here, the court was not obligated to base its measure of the value of marital property on Donald's personal financial statement when Donald testified about the value of the same

---

1. Carol contends the court's judgment is inadequate because it does not specifically discuss the interests in the North School and Stratford County housing project partnerships. The judgment states, however, that Donald "will retain his business interests in ... the partner-

ships...." Furthermore, Donald testified that those interests are currently worth nothing.

2. Carol's motion requested "findings of fact and conclusions of law relative to the judgment dated June 28, 1996, issued by this Court."

property at the divorce hearing. Donald was competent to testify about the value of his property, *see Simmons v. State Highway Comm'n*, 234 A.2d 330, 332 (Me.1967), and "[w]e give due regard to the opportunity of the trial court to judge the credibility of the witnesses and weigh the evidence." *Gray*, 609 A.2d at 697 (citations omitted). The values placed on much of the property in the financial statement were also based on Donald's own estimates; as the factfinder the court was free to conclude that his estimates at trial were more accurate measures of value than those in his financial statement submitted to the bank for the purpose of obtaining a loan. *See Walters v. Petrolane–Northeast Gas Serv., Inc.*, 425 A.2d 968, 974 (Me.1981) (jury was free to accept party's testimony that value of property lost in fire was between $156,000 and $158,000 even though the party's estimate of the same loss on a prior tax form was $61,064).

[¶ 15] Although Carol contends that the court's findings regarding the value of the equity of the encumbered marital real estate and the value of some of their business interests are not supported by evidence presented at the hearing, there is competent evidence to support the court's findings. The court's calculation that the equity in the couple's encumbered real estate is $165,000 is supported by Donald's testimony,[3] as is the court's finding that the present value of Donalco and Main Street Auto is about $123,700.[4] Finally, Donald testified at length about the value of his interest in Ariel Corpo-

ration and its current financial situation. The record supports the court's finding that his interest in the corporation has no value, and since he is liable for a third of the corporate debt, his current interest in the enterprise is represented by a substantial claim on his other assets.[5]

### III.

[¶ 16] Carol contends that the court abused its discretion because it awarded Donald almost all of the marital property. She asserts that the court should have made her and Donald co-owners of the marital property because there was no reliable valuation data for the property and co-ownership was the only way to insure an equitable distribution.

[¶ 17] We review the trial court's disposition of marital property for an abuse of discretion. *Arey v. Arey*, 651 A.2d 351, 353 (Me.1994) (citation omitted). "Absent a violation of some positive rule of law, we will overturn the trial court's decision 'only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument.'" *Id.* (quoting *Williams v. Williams*, 645 A.2d 1118, 1123 (Me.1994)).

[¶ 18] The divorce court may, in its discretion and when justice requires, leave the divorced parties as co-owners of property with either party free to initiate proceedings for partition when the party wishes. *Zillert*

3. Donald testified that the Baxter Boulevard property was appraised in 1994 at $290,000, and is encumbered by a home equity loan of $215,000. He testified that their various rental properties are valued at about $1,127,000, but are encumbered with mortgages totaling $737,000. In addition, all of the rental property is cross-collateralized to secure a letter of credit from Key Bank for $300,000. Taken together, the value of the real estate exceeds the debt by $165,000.

4. Donald testified that the value of land in South Portland owned by Donalco is worth between $100,000 and $150,000, and the value of automobiles owned by Donalco and Main Street Auto is between $56,500 and $57,000. Finally, Donald testified that Donalco has debts totaling about $58,000. Thus, the court's finding that the net worth of Donalco and Main Street Auto is about

$123,700 is supported by competent evidence in the record.

5. Carol contends that Ariel Corporation is worth more than the negative value determined by the trial court, but the record does not support her assertion. The corporation's liabilities exceed its assets. In order for the corporation to obtain financing for one of its properties, Donald loaned the corporation $900,000, and the corporation's two other shareholders also loaned the corporation $1 million each. Carol conceded at oral argument that even without considering Ariel's debts to its shareholders, the corporation's debts still exceed its assets. Because of the corporation's financial circumstances, the court determined that the debt owed to Donald as a result of the loan is uncollectible, that his shares are worthless, and his share of the uncovered corporate debt is $639,167.

*v. Zillert,* 395 A.2d 1152, 1157 (Me.1978) (footnote omitted). Although the creation of joint tenancies in the marital property may be appropriate in some circumstances, the divorce court "should endeavor to divide the marital property in such a manner as to avoid continued financial interaction between the parties." *Berry v. Berry,* 658 A.2d 1097, 1099 (Me.1995) (citation omitted). Because "[w]e cannot expect divorced parties to continue a business relationship that will optimize resources and profits[,] . . . it is particularly important to avoid creating situations where the divorced parties remain in joint management of income producing property." *Id.*

[¶ 19] The court acted within its discretion when it refused to make Carol and Donald co-owners of the marital property. Contrary to Carol's contention, Donald's testimony provided competent evidence regarding the value of the marital property on which the court based its distribution. Furthermore, creating joint tenancies would require continued interaction and business relations creating a potential for continued conflict between the parties. Nothing about the court's refusal to make Donald and Carol co-owners violates a rule of law or creates a plain and unmistakable injustice.

[¶ 20] We also reject Carol's assertion that the court abused its discretion when it awarded Carol only the Florida condominium and half of the Eustis property. In light of the court's findings as to the value of the assets and the amount of the liabilities, the court's award does not create an instantly visible injustice and the court acted within its discretion.[6]

### IV.

[¶ 21] Carol contends the court abused its discretion when it did not award her greater alimony and that the factors in 19 M.R.S.A. § 721 (Supp.1996)[7] mandate a larger award.

[¶ 22] "A divorce court is vested with broad powers to order one spouse to pay alimony to the other if the amount is reasonable and takes into account the paying spouse's ability to pay." *Gray v. Gray,* 609

---

**6.** Although not presented by the trial court in tabular form, the court's valuation and distribution of the couple's property can be summarized as follows:

| | Equity | Donald | Carol |
|---|---|---|---|
| Baxter Blvd. residence | $ 75,000 | $ 75,000 | |
| Condos in Florida | $200,000 | $100,000 * | $100,000 |
| Eustis property | $217,000 | $108,500 | $108,500 |
| Donalco & Main St. Auto | $123,700 | $123,700 | |
| Rental properties | $ 90,000 | $ 90,000 | |
| Real estate partnerships | 0 | 0 | |
| Ariel Corp. | ($639,167 ) | ($639,167 ) | |
| | $ 66,533 | ($141,967 ) | $208,500 |

* The court awarded Donald one condo when it distributed the couple's property but then awarded it to Carol in lieu of alimony.

**7.** 19 M.R.S.A. § 721(1) (Supp.1996) provides:
The court shall consider the following factors when determining an award of alimony:
A. The length of the marriage;
B. The ability of each party to pay;
C. The age of each party;
D. The employment history and employment potential of each party;
E. The income history and income potential of each party;
F. The education and training of each party;
G. The provisions for retirement and health insurance benefits of each party;
H. The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
I. The health and disabilities of each party;
J. The tax consequences of an alimony award;
K. The contributions of either party as homemaker;
L. The contributions of either party to the education or earning potential of the other party;
M. Economic misconduct by either party resulting in the diminution of marital property or income;
N. The standard of living of the parties during the marriage; and
O. Any other factors the court considers appropriate.

A.2d 694, 698 (Me.1992) (citation omitted). "[W]e defer to the discretion of the trial court unless 'the court has violated some positive rule of law or has reached a result which is plainly and unmistakenly an injustice that is so apparent as to be instantly visible without argument.'" *Arey v. Arey,* 651 A.2d 351, 354 (Me.1994) (quoting *Bryant v. Bryant,* 411 A.2d 391, 395 (Me.1980) (quotations omitted)).

[¶ 23] The court acted within its discretion here. The court considered the length of Carol and Donald's marriage and Carol's lack of employment skills and balanced these factors against Donald's current ability to pay, noting that Donald currently has no source of income, a negative cash flow from his rental units, and is liable for enormous debts. The court also reasoned that, because of the substantial debts on most of the properties, their liquidation would yield very little and would create high tax burdens because the tax bases of the properties were so low. Although Carol's circumstances indicate that significant alimony would not be unwarranted, Donald's current financial situation dictates that we affirm the court's award. Donald testified that he is currently living on the proceeds of the home equity loan with no way to make a living other than to obtain small carpentry jobs, and his 1994 tax return reflects that his net taxable income for that year was only $20,284. Finally, the court recognized that Donald's business interests in Ariel Corporation and Donalco may, in the future, be very profitable. The court's award of $1 per year in alimony allows Carol to seek a modification of the alimony award in the future if Donald's financial circumstances improve.

## V.

[¶ 24] Carol contends that Donald violated the preliminary injunction imposed by 19 M.R.S.A. § 692–A(1)(B)(1) (Supp. 1996) [8] when he transferred the Eustis property to their son and when he sold the rental units on Carleton and Harrison Streets. She argues that his economic misconduct should have been reflected in the divorce judgment.

[¶ 25] A court's finding that a party to a divorce did or did not engage in economic misconduct is reviewed for clear error. *See Quin v. Quinn,* 641 A.2d 180, 181–82 (Me.1994). *See also McKinley v. McKinley,* 651 A.2d 821, 824 (Me.1994) (reviewing for clear error the court's finding that a party failed to comply with a court order). In *Quin* we concluded the trial court was compelled to find that the husband engaged in economic misconduct when he transferred a condominium to the couple's children on the eve of a divorce action for the sole purpose of diminishing the marital estate, and when he took affirmative steps to prevent the wife from learning about the transfer as she prepared to file for the divorce. 641 A.2d at 181–82. We vacated the judgment and remanded the case because the court failed to take into account such misconduct when determining the proper amount of alimony to award to the wife pursuant to 19 M.R.S.A. § 721. *Id.* at 182.

[¶ 26] Unlike the circumstances present in *Quin,* the record in the instant case supports the court's finding that Donald did not transfer the property for the purpose of diminishing the marital estate. Donald testified that he transferred the Eustis property to their son to avoid the reach of creditors, and Donald and his son recognized that the Eustis property equitably belonged to Donald and was subject to the court's division. Donald testified he sold the rental properties at the request of the bank when he was trying to obtain refinancing, and did not receive any of the proceeds from the sales because the money was applied to pay down existing debts on those properties. Donald also stated that he attempted to notify Carol about the transfer of the Eustis property and only completed the transfer when she did not respond. Donald's testimony supports the court's findings that Donald was not attempting to conceal or convert assets to prevent Carol from receiving her share of the marital

8. The statute provides, in pertinent part:
[E]ach party is enjoined from transferring, encumbering, concealing, selling or otherwise disposing of any property of either or both of the parties, except in the usual course of business or for the necessities of life, without the written consent of the parties or the permission of the court. . . .

property, and the court did not err in finding that he did not violate the preliminary injunction.

## VI.

[¶ 27] Carol contends that the court abused its discretion by refusing to order Donald to pay her attorney fees because she is incapable of paying them herself.

[¶ 28] 19 M.R.S.A. § 721(2) (Supp.1996) authorizes the court to order either party to pay the costs and attorney fees to the other party in an action for divorce. "In awarding attorney fees, the court is to consider the parties' relative capacity to absorb the costs of litigation." *Harding v. Murray*, 623 A.2d 172, 177 (Me.1993) (citation omitted). "We review an award of attorney fees in a divorce action under an abuse of discretion standard." *Gray*, 609 A.2d at 699. A court's refusal to award attorney fees to a party is not an abuse of discretion when the parties are of equal or near equal financial strength after the divorce. *Lagarde v. Lagarde*, 437 A.2d 872, 875–76 (Me.1981).

[¶ 29] The court acted within its discretion when it refused to order Donald to pay Carol's attorney fees. Donald's own fees amount to over $50,000. Even though Carol is unable to pay her fees, the record supports the finding that Donald is similarly unable to pay them. Given the parties' equal or near equal financial weakness, the court's refusal to award fees was within its discretion.

The entry is:

Judgment affirmed.

