2003 ME 74

**Erica J. JED–HARBAGE**

v.

**Peter HARBAGE.**

Supreme Judicial Court of Maine.

Argued: April 8, 2003.
Decided: May 30, 2003.

David J. Van Dyke, Esq. (orally), Berman & Simmons, P.A., Lewiston, for plaintiff.

Kenneth P. Altshuler, Esq. (orally), Childs, Rundlett, Fifield, Shumway & Altshuler, LLC, Portland, for defendant.

1. Although the divorce judgment speaks of retirement accounts in the plural, the subsequent QDRO and the briefs filed by the par-

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Peter Harbage appeals from an order entered in the Superior Court (Oxford County, *Cole, J.*) rejecting the portion of a referee's report that addressed the postdivorce distribution of Erica Jed–Harbage's share of his 401(k) plan pursuant to a Qualified Domestic Relations Order (QDRO). Peter asserts that the referee correctly determined that the sum to be distributed to Erica from his 401(k) plan was subject to adjustment for its pro rata share of interest, dividends, expenses, and investment gains and losses from the date of the divorce judgment to the date of the funding of Erica's separate account, and that the court erred by rejecting the referee's report. We agree and vacate the order.

## I. BACKGROUND

[¶ 2] Peter and Erica were divorced pursuant to a divorce judgment of the Superior Court (*Gorman, J.*) entered in January 2001. The divorce judgment adopted the report, as amended, of a referee appointed pursuant to M.R. Civ. P. 53 and 19–A M.R.S.A. § 252 (1998). The referee's initial report included the following provision governing the distribution of Peter's 401(k) plan:

9. The sum of $250,000.00 shall be transferred to the Plaintiff [Erica] from the Defendant's [Peter's] retirement accounts, by way of a Domestic Relations Order. The Referee shall retain jurisdiction over this matter for purposes of effectuating [a] Qualified Order.[1]

ties on appeal reflect the existence of only a single 401(k) account.

The referee subsequently amended this provision as follows:

> 3. Paragraph 9 is amended to provide that the Court shall retain continuing jurisdiction to insure the issuance of a Qualified Domestic Relations Order. The Defendant shall provide to the Plaintiff's counsel information pertinent to his 401(k) plan and the Plaintiff shall be responsible for the preparation of a Qualified Domestic Relations Order.
>
> Paragraph 9 is further amended to authorize the Defendant [Peter] to transfer to the Plaintiff [Erica], in addition to the sum set aside to her as her sole and exclusive possession, an additional sum of up to $50,000.00 from his 401(k) (the sum to be transferred being the sole and exclusive decision of the Defendant [Peter]). The Plaintiff [Erica] shall liquidate the additional sum transferred to her by the Defendant [Peter] and shall give to the Defendant [Peter] 60% of the sum so transferred and liquidated.

After a hearing on Erica's objections to the referee's report, the Superior Court accepted the report, as amended, and adopted it as part of its divorce judgment.

[¶ 3] Erica's attorney filed the required QDRO in April 2001, which the Superior Court (*Delahanty, J.*) accepted. After the parties realized that the QDRO contained the wrong date for valuation, a corrected QDRO was filed and entered several weeks later. The corrected QDRO used the date of divorce as the valuation date and stated in pertinent part:

> The Plan Administrator shall assign to the Alternate Payee [Erica] from the Participant's [Peter's] entire account balance valued as of January 4, 2001 or the nearest valuation date the sum of $300,000 or the balance of the Participant's [Peter's] account, if less (the "Share")... . The Share shall have allocated to it and transferred from the Participant's [Peter's] account to the Alternate Payee's [Erica's] account its *pro rata* share of interest, dividends, expenses, and investment gains or losses from the date specified above in this Section 3 until the Alternate Payee's [Erica's] account is funded.

Because of the downturn in the securities market following the entry of the divorce judgment in January 2001, Erica's $300,000 share of the 401(k) account was reduced in value to $272,000 when it was distributed to her in August 2001. Because she received less than the $300,000 specified in the divorce judgment, Erica did not, in turn, pay $30,000 or a reduced amount to Peter.

[¶ 4] In December 2001, Peter filed a postjudgment motion for the appointment of a referee to address "post-divorce issues" between the parties. His motion did not set forth the issues or the nature of the relief sought. Erica did not object to the motion, and the court appointed a second referee "to report on all post-divorce issues currently pending" in the case. One of the issues the parties presented to the referee was the question of the distribution of Erica's share of the 401(k) account. Peter contended that the language in the QDRO, requiring that Erica's share shall have allocated to it its pro rata share of interest, dividends, expenses, and investment gains and losses, governed the distribution. Erica contended that the QDRO was in conflict with the divorce judgment, and that she was entitled to receive $300,000 as referenced in the divorce judgment without any adjustments.

[¶ 5] Following a hearing, the referee issued a report addressing several property related issues, including the distribution

of the 401(k) proceeds.[2] "The QDRO," wrote the referee, "did not state, as one could read the [divorce judgment] that a *fixed* sum of $300,000, regardless of market influences, be distributed to Erica." The referee found as follows:

[T]he realities of plan administration .... also created an unavoidable situation—the Oxford Hills plan can not guarantee distribution of a flat or certain sum of a pension valued as of a specific day because of the quarterly distribution and valuation requirements in the plan documents which make this pension ERISA qualified. This is why the QDRO had to read the way it did.

Thus, the referee concluded that Erica's share of the 401(k) plan must be adjusted for its decreased value as provided in the QDRO.

[¶ 6] Erica filed an objection to the referee's report, and Peter moved for its acceptance and entry of judgment. After a nonevidentiary hearing, the Superior Court (*Cole, J.*) rejected the portion of the referee's report concerning the distribution of 401(k) proceeds as "clearly erroneous and ... not supported by governing law." The court determined that Erica's share of Peter's 401(k) plan was a "fixed and firm sum" and "that [$]300,000 means [$]300,000." After the court denied Peter's request that it reconsider the order, Peter filed this appeal.

## II. DISCUSSION

[¶ 7] Peter contends that the referee correctly determined that the distribution to Erica from his 401(k) plan was subject to its proportionate share of the decreased value of the account as dictated by the terms of the QDRO, and the Superior Court's rejection of this aspect of the referee's report constituted reversible error because the referee's findings were not clearly erroneous. Erica counters that the Superior Court correctly interpreted the divorce judgment as awarding her a fixed sum and that, contrary to Peter's contention, the award of a fixed sum is prohibited neither by the terms of Peter's 401(k) plan nor by federal law.

■ [¶ 8] A trial court "may find [a referee's] report, or parts thereof, 'clearly erroneous' only when the *factual findings* are unsupported by the record." *Hennessy v. Fairley*, 2002 ME 76, ¶ 18, 796 A.2d 41, 47; M.R. Civ. P. 53(e)(2) (stating that, upon objection to the report, "[t]he court shall adopt the referee's findings of fact unless clearly erroneous"). "On appeal, the party objecting to a referee's report bears the burden of proving error by the referee." *Marja Corp. v. Allain*, 622 A.2d 1182, 1184 (Me.1993). To the extent that we must determine whether a divorce judgment or QDRO is ambiguous, we review this question of law de novo. *E.g., Thompson v. Rothman*, 2002 ME 39, ¶ 6, 791 A.2d 921, 923.

■ [¶ 9] A divorce judgment may employ a QDRO to direct payment of retirement benefits to an alternate payee[3] in connection with the distribution of marital and nonmarital assets pursuant to 19–A M.R.S.A. § 953 (1998 & Supp.2002). A QDRO must clearly specify, among other things, "the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the

---

2. The referee filed a separate report dealing with child custody matters not at issue in this appeal.

3. An "alternate payee" is a pension plan participant's spouse, former spouse, child, or other dependent who, under a QDRO, has a right to receive all, or a portion of, the participant's pension benefits under the plan. 26 U.S.C. § 414(p)(8) (2001).

manner in which such amount or percentage is to be determined." 26 U.S.C. § 414(p)(2)(B) (2001). As we explained in *Austin v. Austin*, 2000 ME 61, ¶ 2 n. 1, 748 A.2d 996, 998, dividing a 401(k) account requires

> [T]he use of a QDRO because of the restrictions placed on pensions by the Internal Revenue Code and Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1056(d) (1999). Without a QDRO, pension benefits may not be divided and distributed to a person other than the employee to [whom] they originally accrued. *See id.*

 [¶ 10] Because QDROs serve to implement the distribution of retirement accounts associated with ERISA qualified plans that are subject to administration by someone other than the parties, they are frequently submitted to the plan's adminis-trator for approval following the entry of the divorce judgment, but prior to the approval and entry of the QDRO by the court. *See Washington v. Washington*, 2000 WI 47, ¶ 33, 234 Wis.2d 689, 611 N.W.2d 261, 269.[4] A court may retain postjudgment jurisdiction to consider and then enter the QDRO following its approval by the plan's administrator. When a QDRO is prepared pursuant to a judgment directing its preparation, the QDRO generally constitutes a more complete and specific expression of the court's intention regarding the distribution of the account than does the judgment that preceded it.

 [¶ 11] Here, both the divorce judgment and the QDRO constitute final judgments, and neither party has sought postjudgment relief pursuant to M.R. Civ. P. 60(b).[5] The referee acknowledged, and the

---

4. In *Washington*, a divorce judgment awarded each spouse a roughly equal lump-sum share of the exhusband's federal pension, distribution payments from which were expected to begin twenty-one years from the date of the divorce. 2000 WI 47, ¶¶ 5–6, 234 Wis.2d 689, 611 N.W.2d 261, 263–64. The judgment, however, lacked details of the pension division and was silent on the allocation of interest or appreciation. *Id.* ¶ 6, 611 N.W.2d at 264. The Supreme Court of Wisconsin noted that parties and courts "frequently fail to work out the details of the final division of a pension until after a divorce judgment." *Id.* ¶ 33, 611 N.W.2d at 269. The court determined that the divorce judgment was ambiguous because it failed to address the allocation of appreciation and interest on the pension between the date of the divorce and the date for the distribution of the pension. *Id.* ¶ 35, 611 N.W.2d at 269.

5. M.R. Civ. P. 60(b) provides the following:
Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of bills of review are abolished as means of reopening judgments entered under these rules, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

parties do not dispute, the existence of a possible conflict between the terms of the divorce judgment and the QDRO because, as found by the referee, "[t]he QDRO did not state, as one could read the [divorce judgment as requiring], that a *fixed* sum of $300,000, regardless of market influences, be distributed to Erica." The judgment did not, however, expressly characterize the $300,000 as a *fixed* sum and is otherwise silent on the question of gains, losses, income, and expenses occurring between the date of the divorce judgment and the funding of Erica's separate account. Standing alone, and without reference to the QDRO which followed, the divorce judgment fails to clearly specify ... "the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined." 26 U.S.C. § 414(p)(2)(B). The divorce judgment's failure to address whether the amount awarded to Erica from Peter's IRA account is "fixed" or subject to pro rata adjustments in value renders the judgment ambiguous. *Thompson*, 2002 ME 39, ¶ 9, 791 A.2d at 924; *compare Washington*, 2000 WI 47, ¶ 35, 611 N.W.2d at 269 (concluding that a final judgment that failed to address allocation of a pension's appreciation and interest between the divorce date and the distribution date was ambiguous) *with Jackson v. Jackson*, 2002 OK 25, ¶ 16, 45 P.3d 418, 427 (concluding that a final judgment that contained a detailed "formula-driven recitation" for awarding a spouse a share of the other spouse's pension was clear and unambiguous).

[¶ 12] The QDRO, in contrast, clearly and unambiguously provides that Erica's share of the 401(k) shall have allocated to it "its pro rata share of interest, dividends, expenses, and investment gains and losses from the [valuation date] ... until the Alternate Payee's account is funded." This language accomplishes the clear spec-ification of the method the plan administrator is to use to determine the sum of money required to fund Erica's account. Thus, the QDRO constitutes a more complete and specific expression of the court's intention regarding the distribution of Erica's share of the 401K account, and its terms control the distribution of Erica's share.

[¶ 13] The referee's finding regarding the requirements of the 401(k) account based on the plan documents lends additional support for the foregoing conclusion. The referee found that the Oxford Hills plan's quarterly distribution and valuation requirements, which helped qualify it as an ERISA pension plan, prevented guaranteed distribution of a fixed sum on a specific day. "This is why the QDRO had to read the way it did," concluded the referee. Neither party obtained a record of the proceedings before the referee, including the exhibits. Therefore, there is no basis to conclude that the referee committed clear error when she found that the plan's requirements compel a distribution of Erica's share of the 401(k) plan in the manner provided by the QDRO.

[¶ 14] Because the relevant provision of the divorce judgment was ambiguous, while the relevant provision of the QDRO was unambiguous and in keeping with the distribution requirements of · the 401(k) plan at issue, the Superior Court erred when it rejected the referee's report and ordered the distribution of a fixed sum to Erica.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of an order accepting the report of the referee regarding the distribution from the 401(k) plan and judgment thereon.