MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 73
Docket:       Pen-19-230
Submitted
  On Briefs:  December 17, 2019
Decided:      May 21, 2020

Panel:        MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

PAMELA A. DOBBINS

v.

MARK J. DOBBINS

HUMPHREY, J.

[¶1]   Mark J. Dobbins appeals from a judgment of the District Court (Bangor, *Jordan, J.*) granting Pamela A. Dobbins's motion to enforce the terms of a 2007 divorce judgment and a 2009 court order acceptable for processing (COAP) federal retirement benefits.[1]   Mark argues that the language in the

---

   * Chief Justice Saufley participated in the appeal but resigned before this opinion was certified. Justice Alexander also participated in the appeal but retired before this opinion was certified.

   [1] The parties and the court refer to the court's order as a "qualified domestic relations order" or "QDRO."  However, the court's 2009 order is entitled "Court Order Acceptable for Processing Under the Federal Employees Retirement System" (COAP), which is required by 5 C.F.R. §§ 838.101-.1121 (2020).  *See* 5 U.S.C.S. § 8467(a)(1) (LEXIS through Pub. L. No. 116-140); *see also* 2 Brett R. Turner, *Equitable Distribution of Property* § 6:14 at 104-06 (4th ed. 2019) (discussing COAPs and the distribution of federal retirement benefits).  A QDRO is an order allocating retirement benefits pursuant to a private retirement plan governed by ERISA, s*ee* 29 U.S.C.S. § 1056(d) (LEXIS through Pub. L. No. 116-140), from which Mark's federal retirement plan is exempt, *see* 29 U.S.C.S. § 1003(b)(1) (LEXIS through Pub. L. No. 116-140).  Although a COAP has the same procedural effect as a QDRO, a COAP is required before the United States Office of Personnel Management (OPM) will distribute *federal* retirement benefits and is subject to different requirements.  *See* 5 C.F.R. §§ 838.101-.1121; *see also* 5 U.S.C.S. §§ 8301-8480 (LEXIS through Pub. L. No. 116-140).  Because of

COAP stating that he "is required to retire at age 62" is inconsistent with the underlying divorce judgment and that the court lacked the authority to order him to retire. We agree and vacate the judgment.

## I. BACKGROUND

### A. Divorce Judgment and COAP

[¶2] Pamela and Mark were married in 1976. On July 26, 2006, Pamela filed a complaint for divorce against Mark.[2] The court (*R. Murray, J.*) entered a final divorce judgment on October 17, 2007, which stated, in relevant part, that

> [Mark] is the owner of pension/retirement plans through the United States Postal Service. The court finds that said pension/retirement accounts are marital property and orders that said pension/retirement accounts be divided equally between the parties. The Court further orders that the necessary [COAP] shall be prepared by [Pamela's] counsel and shall be filed with the Court and forwarded to the Administrator of said pension/retirement accounts. [Pamela] shall cease to have any survivor benefits from the aforesaid account held by [Mark] upon entry of this judgment.

---

these technical differences and in order to avoid further confusion, we use the term "COAP" throughout this opinion when discussing what the parties and the court refer to as a "QDRO."

[2] During the pendency of the divorce proceedings, Mark reached a settlement agreement with the United States Postal Service regarding a prior, work-related personnel dispute. As part of the agreement, Mark had agreed to retire at the age of fifty-five. However, before the court entered a final divorce judgment and before Mark retired at age fifty-five, Mark became qualified for disability and began receiving disability retirement benefits from the federal Office of Personnel Management in January 2008.

On May 14, 2009, the court entered a COAP, which directed the United States Office of Personnel Management (OPM) to pay directly to Pamela "an amount equal to [f]ifty [p]ercent . . . of the [m]arital [p]ortion" of Mark's retirement benefits "determined as of [Mark's] date of retirement." Section 1(e), the provision of the COAP at issue, states that the order "is not intended to award to [Pamela] any portion of [Mark's] disability benefits. [Mark] is required to retire at age 62."

[¶3] More than three years later, on July 6, 2012, Pamela filed motions for relief from judgment and to enforce the divorce judgment and COAP, arguing that Mark's qualification for disability payments had prevented her from receiving any of his retirement benefits. The court (*Jordan, J.*) denied Pamela's motions on December 3, 2012, finding that the COAP did not change the language in the divorce judgment dividing each party's retirement benefits or "require that either party receive any disability benefits received by the other prior to the retirement plans becoming effective." We affirmed the judgment on appeal. *See Dobbins v. Dobbins*, Mem-13-111 (Nov. 5, 2013).

[¶4] Following the 2013 appeal, Mark remained on disability until September 23, 2014, when the Office of Personnel Management determined

4

that he was no longer disabled. Later, in May 2016, Mark was "reinstated and reemployed" by the Postal Service to a position in Virginia.

B.    Motion to Enforce

[¶5]  Mark turned sixty-two years old on March 7, 2018. On March 23, 2018, Pamela filed a motion to enforce the 2007 divorce judgment and section 1(e) of the COAP, asking the court to "[o]rder [Mark] to retire immediately" from his job with the Postal Service. *See* M.R. Civ. P. 120. Alternatively, Pamela requested that, if the court did not order Mark to retire, he be required to pay her the marital portion of the retirement benefits. Following a nontestimonial hearing, the court (*Worth, J.*) initially granted Pamela's motion to enforce on October 17, 2018, ordering that Mark "retire immediately" and "reimburse [Pamela] for an amount equivalent to her monthly benefit times the number of months that passed between [the first date the benefits would have been dispersed had Mark retired] and the date she begins receiving the benefit from the Federal Retirement System."[3]

[¶6]  Two weeks later, now represented by counsel, Mark filed a motion for a new hearing and for relief from judgment, arguing that the divorce

---

[3]  Although Mark was unrepresented by counsel at the nontestimonial hearing, he filed, and the court considered, a "motion to quash," in which he replied to Pamela's motion to enforce. Mark retained counsel after the entry of the court's October 17, 2018, order.

judgment and COAP were ambiguous and that the court was not authorized to order him to retire. *See* M.R. Civ. P. 59(a), 60(b). On January 8, 2019, the court granted, in part, Mark's motion and allowed a new conference to be scheduled "on the narrow issue of the constitutionality of requiring him to fulfill the requirement to retire at a specific age."[4]

[¶7]  The court (*Jordan, J.*)[5] held a status conference on February 5, 2019, and required the parties to file affidavits addressing the COAP and "what factual basis they assert for their position[s]."  In his affidavit, Mark stated that he had developed a medical condition during the pendency of the divorce and that he had believed at that time that he would receive "retirement disability" and that his "retirement disability would be automatically converted to retirement by the [U.S.] Office of Personnel Management at age 62."  Pamela's affidavit stated that the parties and their attorneys discussed and agreed upon the terms contained in the COAP before it was signed by the court in 2011, and that the parties had already litigated the issue of the divorce judgment and the COAP.

---

[4]  Because the court found that the parties had previously litigated in 2012 the issue of whether the divorce judgment and the COAP were consistent, the court denied Mark's motion for a new hearing "on any issues related to consistency or ambiguity between the [COAP] and the divorce judgment."

[5]  It is not clear why one judge could not—and did not—address all of the complex litigation in this case.

[¶8] On March 22, 2019, without holding a hearing, the court found that Mark's failure to challenge the COAP language during the 2012 proceedings "amount[ed] to a waiver and concession as to its appropriateness," and that Mark had "voluntarily conferred upon the court the authority to order him to retire." The court concluded that Mark "does not have to retire," but must pay Pamela "the equivalent of what she would have received if he retired as per the [COAP]."

[¶9] Mark moved for further findings of fact, to alter or amend the judgment, and for relief from judgment, *see* M.R. Civ. P. 52, 59, 60, arguing, in part, that the court's March 22, 2019, order "impermissibly alter[ed] the division of property pursuant to the underlying [COAP] and divorce decree." Pamela objected to Mark's motion and moved for relief from judgment. She argued that the court should amend its order and require, instead, that Mark retire immediately pursuant to section 1(e) of the COAP.

[¶10] On May 24, 2019, the court denied Mark's motion. In a separate order issued that same day, the court amended its March 22, 2019, order, striking the requirement that Mark make "equivalent" payments in lieu of retiring. The court found that the divorce judgment and the COAP were "enforceable as written." The court granted Pamela's motion to enforce and

ordered that Mark retire. Mark timely appealed. *See* 19-A M.R.S. § 104 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶11] We first address Mark's contention that the court was without the statutory authority to order him to retire.[6] "We review de novo whether a court has legal authority to take the action it has taken." *Petersen v. Van Overbeke*, 2018 ME 104, ¶ 10, 190 A.3d 244 (quotation marks omitted).

[¶12] "[T]he jurisdiction of the divorce court is purely statutory, and its authority to act on matters of divorce must arise out of the statutory law or not at all." *Merrill v. Merrill*, 449 A.2d 1120, 1124 (Me. 1982). In relevant part, a court is authorized to divide marital property "in proportions the court considers just after considering all relevant factors." 19-A M.R.S. § 953(1) (2020). It is presumed that "[a]ll property acquired by ether spouse

---

[6] Pamela argues that Mark's contentions in the current matter are barred by res judicata. Similarly, on January 8, 2019, the court (*Worth, J.*) found that any inconsistencies between the divorce judgment and the COAP "ha[d] already been considered" during the 2012 proceedings and subsequent appeal, and, on March 22, 2019, the court (*Jordan, J.*) found that Mark's failure to challenge the retirement language in the COAP during the prior proceedings "amount[ed] to a waiver and concession as to its appropriateness." However, we conclude that the 2012 proceedings did not have preclusive effect on Pamela's 2018 motion to enforce because the issue of Mark's date of retirement was not "already decided," nor is it evident that this issue "[was], or might have been, litigated in the first action." *Berry v. Mainstream Fin.*, 2019 ME 27, ¶ 8, 202 A.3d 1195 (quotation marks omitted). In the court's December 3, 2012, order denying Pamela's motions, the court addressed the issue of whether Pamela was entitled to a portion of Mark's disability benefits and concluded that she was not entitled to receive these benefits "prior to the retirement plan[] becoming effective." Here, because Mark was on disability during the 2012 proceedings but has since been re-employed with the Postal Service, the issue we consider—whether the COAP requires Mark "to retire at age 62"—was not, nor could it have been, addressed in the 2012 proceedings.

subsequent to the marriage and prior to a decree of legal separation" is marital property. 19-A M.R.S. § 953(3) (2020). A spouse's unvested pension benefits may be subject to equitable division as marital property. *See Wright v. Michaud*, 2008 ME 170, ¶ 11, 959 A.2d 753.

[¶13] When a court determines that a spouse's federal retirement plan is marital property, the distribution of benefits in that plan must comply with federal law. *See* 5 U.S.C.S. § 8467(a) (LEXIS through Pub. L. No. 116-140); *see generally* 5 C.F.R. § 838.101 (2020). A COAP, like the one entered in this case, authorizes the payment of retirement benefits that "would otherwise be paid to an employee" to be paid, instead, "to another person if and to the extent expressly provided for in the terms of . . . any court decree of divorce." 5 U.S.C.S. § 8467(a)(1). Thus, a COAP acts as "a procedural device[] for enforcing the terms of the underlying substantive order." 2 Brett R. Turner, *Equitable Distribution of Property* § 6:20 at 151, 158 (4th ed. 2019).

[¶14] Here, the court had the authority to divide the marital property distributed in the 2007 divorce judgment, including the marital portion of Mark's federal retirement benefits. *See Wright*, 2008 ME 170, ¶ 11, 959 A.2d 753; 19-A M.R.S. § 953(1). Pursuant to federal law, the court also possessed the authority to enter the subsequent COAP and order that the marital portion

of Mark's benefits be paid directly to Pamela. *See* 5 U.S.C.S. § 8467(a); 5 C.F.R. § 838.301-.306 (2020). However, the court did not have the authority to require Mark to retire on a certain date, and, in granting Pamela's motion to enforce, the court erred. *See* 19-A M.R.S. § 953.

[¶15] Because we conclude that the court could not order Mark to retire, we do not reach the constitutional and due process arguments raised by Mark. The language in section 1(e) of the COAP is more precisely read not as an order from the court directing Mark to retire at age sixty-two but, rather, as a statement recognizing Mark's status with the Postal Service. When the COAP was entered in 2009, Mark was receiving disability benefits, no part of which could be awarded to Pamela. If he had been still receiving those disability payments when he turned sixty-two, however, they would have been converted to retirement benefits pursuant to federal law. *See* 5 C.F.R. § 844.305 (2020) ("Effective on and after the annuitant's 62nd birthday, the rate of annuity payable to a disability annuitant will be the amount of an annuity computed with respect to the annuitant [for a basic retirement annuity] under 5 U.S.C. [§] 8415 [(LEXIS through Pub. L. No. 116-140]."). This provision was important because a portion of the retirement benefits—unlike disability benefits—could be awarded to Pamela.

[¶16]  Having concluded that the court cannot order Mark to retire, we next address his contentions that section 1(e) of the COAP is inconsistent with the terms of the underlying divorce judgment and that the court's "enforcement" of the COAP by requiring him to pay Pamela the equivalent of what she would have received if he had retired at sixty-two alters the division of property in the divorce judgment.

[¶17]  We review an order granting a motion to enforce a divorce judgment for an abuse of discretion or error of law, and review any factual findings for clear error.  *See McBride v. Worth*, 2018 ME 54, ¶ 10, 184 A.3d 14. We review de novo whether a divorce judgment or an order dividing retirement benefits, such as a COAP, is ambiguous.  *See Jed-Harbage v. Harbage*, 2003 ME 74, ¶ 8, 825 A.2d 348 (reviewing a qualified domestic relations order (QDRO)).

[¶18]  "A party to a divorce judgment who files a motion to enforce is entitled to an order of enforcement when the other party has failed to comply with an unambiguous provision of the judgment." *McBride*, 2018 ME 54, ¶ 10, 184 A.3d 14 (quotation marks omitted); *see Ramsdell v. Worden*, 2011 ME 55, ¶ 17, 17 A.3d 1224.  If a judgment is ambiguous, "the court has the inherent authority to construe and clarify the decision." *McBride*, 2018 ME 54, ¶ 17,

184 A.3d 14 (quotation marks omitted).  When ruling on a motion to enforce a divorce judgment, a court does not have "the authority to amend or modify the division of marital property in that judgment."  *Bonner v. Emerson*, 2014 ME 135, ¶ 12, 105 A.3d 1023; *see Lewin v. Skehan*, 2012 ME 31, ¶ 26, 39 A.3d 58 ("A court may not, under the rubric of enforcement, modify the property to be distributed to each party as established in a divorce judgment." (quotation marks omitted)).  However, a court may "enforce a property distribution by making adjustments to the mechanisms necessary for the distribution to occur.  Such adjustments may be warranted when a distributive award is not self-effectuating, and implementation of the award has been frustrated by a party's act or failure to act."  *Black v. Black*, 2004 ME 21, ¶ 12, 842 A.2d 1280 (citation omitted).

[¶19]  When a divorce judgment, in turn, orders the preparation of a subsequent order, such as a COAP, for the purpose of dividing federal retirement benefits, *see* 5 U.S.C.S. § 8467(a); 5 C.F.R. §§ 838.301-.306, that order "generally constitutes a more complete and specific expression of the court's intention regarding the distribution of the [retirement] account than does the judgment that preceded it*." Jed-Harbage,* 2003 ME 74, ¶ 10, 825 A.2d 348.  "[T]he fundamental task" of this subsequent order "is to restate the

retirement benefit terms of the original substantive property division order in a manner which complies with federal law and which divides only those benefits which are actually to be divided under the plan." 2 Turner, *Equitable Distribution of Property* § 6:20 at 150, 158.

[¶20]  However, when there is a "substantial discrepancy concerning the distribution of retirement benefits" between a divorce judgment and an order dividing retirement benefits, such a discrepancy "constitutes an ambiguity that may justify the exercise of [a] court's post-judgment clarification authority." *McPhee v. Me. State Ret. Sys.*, 2009 ME 100, ¶ 33, 980 A.2d 1257.  This authority may include modifying the order "to conform to the intent of the court's judgments." *Id.*  Accordingly, whether it is a qualified domestic relations order (QDRO) or a COAP, the order dividing retirement benefits acts as "a procedural device[] for enforcing the terms of the underlying substantive order" and "cannot reach a result inconsistent with [that order]." 2 Turner, *Equitable Distribution of Property* § 6:20 at 151, 158.

[¶21]  In this case, there is no dispute that Pamela is entitled to a portion of Mark's federal retirement benefits.  The divorce judgment unambiguously states that these benefits are marital property and that this property is to be "divided equally between the parties."  The COAP, in turn,

mirrors this language in the divorce judgment, directing the Office of Personnel Management to pay directly to Pamela "an amount equal to [f]ifty [p]ercent . . . of the [m]arital [p]ortion" of Mark's benefits and providing the calculation to be used in awarding Pamela her marital portion of these benefits. The COAP further states that it "shall not be construed in such a manner as to require the OPM" to pay Pamela any benefits "before the retirement annuity begins to accrue," which is in accordance with federal law. *See* 5 C.F.R. § 838.211(a)(3) (2020).

[¶22] The only question, then, is the timing of the payments to Pamela regarding her marital share of the retirement benefits. The divorce judgment is silent on a distribution date for these payments. The COAP, on the other hand, states that Pamela's share is to be "determined as of [Mark's] date of retirement" and later states that Mark is "required to retire at age 62." Because we have concluded that the court lacks the authority to order Mark to retire at a certain age, that statement is not enforceable.

[¶23] Accordingly, we remand the matter for the court to deny Pamela's motion to enforce, as the only enforceable provision—i.e., that the pension be "determined as of [Mark's] date of retirement"—has not yet occurred.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

Derek A. Jones, Esq., Acadia Law Group, LLC, Ellsworth, for appellant Mark J. Dobbins

Donald Brown, Esq., Don Brown Law, Brewer, for appellee Pamela A. Dobbins

Bangor District Court docket number FM-2006-416
FOR CLERK REFERENCE ONLY